640 So.2d 616 (1994)
Dr. James M. KIDD, III and Carolyn K. Kidd
v.
LOGAN M. KILLEN, INC.
No. 93 CA 1322.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
Rehearing Denied August 17, 1994.
*617 Charles A. Schutte, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for plaintiffs-appellants Dr. James M. Kidd, III and Carolyn K. Kidd.
Murphy J. Foster, III, Breazeale, Sachse, & Wilson, Baton Rouge, for defendant-appellee Logan M. Killen, Inc.
Arthur H. Andrews, Funderburk & Andrews, Baton Rouge, for defendant-appellee First National Ins. Co. of America (Safeco).
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

FACTS
On or about December 18, 1989, plaintiffs, Dr. and Mrs. James M. Kidd, III, purchased a home located on Lot 45, Bocage Estates, in East Baton Rouge Parish from defendant Logan M. Killen, Inc. (Killen). Thereafter, the Kidds discovered numerous latent construction defects in the home. On January 17, 1991, the Kidds filed the instant suit for damages against Killen. The Kidds subsequently amended their petition to name as additional defendants Logan M. Killen, personally,[1] and First National Insurance Company of America (Safeco).[2] The Kidds' amended petition also further delineated the various defects in the home.
Killen later answered the Kidds' petition and filed a reconventional demand against *618 the Kidds, alleging prescription, accord and satisfaction, set-off, failure to provide opportunity to repair, laches, and defamation.[3] Killen then filed a motion for summary judgment. In this motion, Killen contended that the Kidds' exclusive remedy was under the Louisiana New Home Warranty Act, LSA-R.S. 9:3141 et seq., and that the Kidds had no cause of action for bodily injury, property damage, consequential damages, or damages for intentional infliction of emotional distress. The motion for summary judgment was subsequently granted with regard to the issue of damages for mental anguish and was denied in all other respects.
On October 12, 1992, Safeco filed a motion for summary judgment.[4] The Kidds filed the affidavit of Carolyn K. Kidd and the act of cash sale from Killen to the Kidds, together with their memorandum, in opposition to Safeco's motion for summary judgment.
Thereafter, Killen filed a third party demand against Safeco. In the third party demand, Killen alleged that Safeco issued two commercial general liability insurance policies covering the periods from September 1, 1989 through September 1, 1990, and from September 1, 1990 through September 1, 1991. Killen further alleged that, in the principal demand, the Kidds alleged they sustained personal injury and property damage, both of which are covered under the provisions of the Safeco policy. Killen alleged that Safeco had failed to provide a defense as required by the policies and prayed that Safeco be held liable for any damages awarded to the Kidds in the principal demand.
On December 18, 1992, the hearing on the motion for summary judgment was held. At the hearing on the motion for summary judgment, Safeco introduced a copy of its insurance policy and the affidavit of Ted Brothers, the commercial underwriting manager for Safeco. At the hearing, Killen filed an affidavit by Logan M. Killen in opposition to the motion for summary judgment. After considering the evidence and argument of counsel, the trial court rendered judgment on December 22, 1992, granting Safeco's motion for summary judgment and dismissing the Kidds' claims against Safeco at their costs. Thereafter, the Kidds filed a motion for a new trial, which was denied on March 10, 1993.
From this adverse judgment, the Kidds appeal, assigning the following errors:
1. The Trial Court erred in holding, as a matter of law, that damage caused by negligent and faulty construction practices was not the result of an "occurrence," as defined in Safeco's insurance policies.
2. The Trial Court erred in treating the issue of whether damage caused by improper and negligent construction practices was due to an occurrence, as defined in Safeco's insurance policies, as an issue of law rather than an issue of fact.
3. The Trial Court erred in failing to hold that coverage was provided by Safeco's Products-Completed Operations coverage irrespective of whether the damage was caused by an occurrence, as defined in its insurance policies.
4. If the Trial Court held that either Safeco's "work product" exclusion or its "impaired property" exclusion defeated coverage, it erred in so holding.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, *619 show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. 1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136-37 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortega v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover. Penalber v. Blount, 550 So.2d at 583; Hollis v. City of Baton Rouge/Parish of East Baton Rouge, 593 So.2d 388, 389 (La.App. 1st Cir.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).
It is well settled in Louisiana that an insurance policy is a contract, and rules governing interpretation of written agreements apply to insurance contracts. Thibodeaux v. Doe, 602 So.2d 1076, 1078 (La.App. 1st Cir.), writ denied, 605 So.2d 1377 (La.1992). An insurance contract is the law between the parties, and every provision therein must be construed as written. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826, 832 (La.1989); Barnes v. Allstate Insurance Company, 608 So.2d 1045, 1046-47 (La.App. 1st Cir.1992); Thibodeaux v. Doe, 602 So.2d at 1078. In Jim Carey Distributing Co., Inc. v. Zinna, 589 So.2d 526, 528 (La.App. 1st Cir.1991), this court noted that:
The intention of parties to an insurance contract is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance policy should *620 not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. The words of insurance contracts and policies should be given their general and popular interpretation and not that which is strained and unusual. (Citations omitted.)
If the wording of the insurance contract is clear and expresses the parties' intent, the agreement must be enforced as written. The court should not strain to find ambiguity where none exists. Strickland v. State Farm Insurance Companies, 607 So.2d 769, 772 (La.App. 1st Cir.1992). Whether a contract is ambiguous is a question of law. Strickland v. State Farm Insurance Companies, 607 So.2d at 772.
In the instant case, the policy introduced at the hearing was a commercial general liability policy, number CP2212409A AC5 IC15, with the declarations and various forms applicable to all commercial coverage parts attached to the policy. The Declarations set forth the name of the insured (Logan M. Killen, Inc.), the policy period, and the type of insurance provided in the policy. Schedule A to the Declarations set forth the limits of liability as follows:

General Aggregate Limit (other than products-completed
operations) $500,000
Products-Completed Operations Aggregate Limit $500,000
Personal & Advertising Injury Limit $500,000
Each Occurrence Limit $500,000
Fire Damage Limit $ 50,000 Any 1 Fire
Medical Expense Limit $ 5,000 Any 1 Person

Forms IL 70 00 12/86, IL 00 03 1/87, IL 00 17 1/87, IL 00 21 1/87, IL 02 77 5/90, CG 00 01 11/85, CG 01 08 11/85, and CG 81 14 5/87 were attached to the declarations page of the general commercial liability policy originally issued by Safeco to Killen.
Section 1 of the policy addresses the various coverages, and Coverage A dealt with bodily injury and property damage liability. The insuring agreement under this coverage provided, in pertinent part, as follows:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTSCOVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence."
The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Moreover, the policy sets forth numerous exclusions, including the following:
j. "Property damage" to:
(1) Property you own, rent, or occupy;
(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
. . . . . .
(6) That particular part of any property that must be restored, repaired or replaced because "your work"[5] was incorrectly performed on it.

*621 k. "Property damage" to "your product"[6] arising out of it or any part of it.
1. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."[7]
However, there are several exceptions to these exclusions contained in the policy. Paragraph 2 of Exclusion J does not apply if the premises are the insured's "work" and were never occupied, rented or held for rental by the insured. Further, Paragraph 6 of Exclusion J does not apply to "property damage" included in the "products-completed operations hazard." Exclusion L does not apply if the damaged work or the work out of which the damage arises was performed on the insured's behalf by a subcontractor.
In his affidavit, Ted Brothers, commercial underwriting manager for Safeco, stated that as of December 18, 1989, Safeco provided two policies of insurance to Killen. One policy was a comprehensive commercial liability policy, and the other was an automobile insurance policy. Brothers further stated that "there are no other riders, endorsements, or addendum to the insurance policies issued and that the certified copy of policy no. CP2212409A provides the entire insuring agreement" between Safeco and Killen.
Logan Killen's affidavit revealed that the labor and materials for the construction of the plumbing, electrical, heating, cooling, and ventilating systems of the Kidd residence were provided exclusively by Killen's subcontractors and not by any of Killen's direct laborers, and that the fill work was provided by a Killen subcontractor and not by a direct laborer of Killen.
In the affidavit of Carolyn K. Kidd, Ms. Kidd stated that she and her husband acquired the immovable property designated as Lot 45 in Bocage Estates on December 18, 1989. Ms. Kidd also stated that the property was damaged by the negligent and/or intentional acts of Killen.
After reviewing the record and the evidence submitted, we cannot say that there are no genuine issues of material fact as to coverage, nor can we say that reasonable minds must inevitably conclude that Safeco is entitled to judgment as a matter of law. The policy declarations clearly reveal that there is coverage for "products-completed operations hazard" up to the policy limits of $500,000.00. Moreover, in its appellate brief, Safeco unequivocally *622 acknowledges that there is coverage for "products-completed operations."[8]
While the language in the policy contains numerous provisions regarding the coverage, exclusions, and exceptions to the exclusions and may suggest that the damages sustained by the Kidds fall under the "products-completed operations" coverage of the policy, there are no provisions in the policy regarding this coverage, other than that contained in the definitions section of the policy. Moreover, Form JV-1 10/86, which was attached to the policy, shows that Forms CG0037 and/or CG0038 address the liability coverage for products and completed operations, either on an occurrence or claims-made basis. However, no such forms were attached to the policy in the instant case.
We note the numerous cases which hold that a liability policy with a work product exclusionary clause does not provide coverage to the insured for repair or replacement of the contractor's own defective work or defective product. See Smarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir.1992); Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1st Cir.1982), writ denied, 429 So.2d 131 (La.1983); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980). However, none of the policies in these cases contained coverage for "products-completed operations," which Safeco admitted is afforded to Killen. See also Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3rd Cir.1986); Unfortunately, based upon the record before us, we are unable to determine which provisions in the policy address the "products-completed operations" coverage.
Because any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits, even if grave doubt exists as to a party's ability to establish disputed facts at trial, we cannot affirm the trial court's grant of the summary judgment on the facts contained in this record. As such, we find that summary judgment is not warranted.

CONCLUSION
For the above reasons, the judgment of the trial court, granting Safeco's motion for summary judgment and dismissing the Kidds' claims against Safeco, is reversed, and the matter is remanded to the trial court for further proceedings. Safeco is cast for all costs of this appeal.
REVERSED AND REMANDED.
GONZALES, J., concurs.
NOTES
[1] Logan M. Killen, Inc. and Logan M. Killen will be referred to in the opinion as Killen, collectively.
[2] First National Insurance Company of America is an affiliate of SAFECO and is sometimes referred to in the pleadings as "Safeco."
[3] Pursuant to an order to dismiss with prejudice, dated May 12, 1992, Killen's reconventional demand for defamation against the Kidds was dismissed.
[4] The record does not contain a memorandum in support of the motion for summary judgment filed by Safeco. Additionally, Safeco did not attach to its motion any affidavits, depositions, or other evidence in support of the motion for summary judgment.
[5] "Your work" is defined in the policy as:

a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.
[6] "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.
"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.
[7] Under Section VDefinitions, Number 11, subsections a and b address "Products-completed operations hazard," in pertinent part, as follows:

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
b. "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
[8] In its brief to this court, Safeco states on p. 7:

There is no dispute, and there has never been a dispute, that products-completed operation coverage is available to Logan Killen, Inc..[sic] We have never denied even once that the coverage was provided.