676 So.2d 227 (1996)
Joseph Chester ADAMSON, Jr., et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al.
No. 95 CA 2450.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
R. Scott Ramsey, Jr., Berwick, for Plaintiffs/Appellants, Joseph Chester Adams, Jr., et al.
J. Dana Ortego, Houma, for Defendant/Appellee, Louisiana Insurance Guaranty Association.
Philip G. Caire, Baton Rouge, for Intervenor, Louisiana Pest Control Insurance Company.
Dennis J. Elfert, Houma, for Defendant/Appellee, State Farm Mutual Automobile Insurance Company.
*228 Before CARTER and PITCHER, JJ., and KLINE[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a motion for summary judgment.

FACTS
On July 23, 1992, plaintiff, Joseph C. Adamson, Jr., was operating a 1992 Toyota pickup truck owned by his employer, Clay Hebert, d/b/a Rid-A-Critter, Inc. (Hebert). Plaintiff was proceeding in a northerly direction on Parish Road 35 in St. Mary Parish, near its intersection with Southern Pacific Railroad tracks. Simultaneously, Herbert W. Vance was driving a 1979 Mercury automobile in a northerly direction on Parish Road 35, approaching plaintiff's vehicle from the rear. As plaintiff stopped at the railroad tracks for a passing train, he was hit from the rear by the vehicle driven by Vance. As a result of the collision, plaintiff sustained injuries.
On January 14, 1993, plaintiff and his wife, Mariela, filed an action for damages.[2] Named as defendants in the action were Vance; Car Insurance Company, Vance's automobile liability insurer;[3] and State Farm Mutual Automobile Insurance Company (State Farm), plaintiffs' alleged automobile liability and uninsured/underinsured motorist (UM) insurer, as well as the liability and UM insurer of plaintiff's employer, Hebert. Thereafter, by supplemental and amending petition, plaintiffs added as a defendant the Louisiana Insurance Guaranty Association (LIGA).
On September 7, 1993, Louisiana Pest Control Insurance Company filed a petition for intervention, alleging that, as workers' compensation insurer of Hebert, it had paid to or on behalf of plaintiffs workers' compensation benefits and medical expenses incurred as a result of the July 23, 1992, accident. Thus, Louisiana Pest Control Insurance Company contended that it was subrogated to the rights of plaintiffs to the extent of its payments and that it is entitled to preferential payment of such amount out of any damages which might be awarded to plaintiffs.
On June 8, 1994, State Farm filed an answer to plaintiffs' petition, alleging that the policy which had been previously issued to plaintiffs had been validly canceled and was not in full force and effect on the date of the accident.
On May 17, 1995, State Farm filed a motion for summary judgment, contending that there was no genuine issue as to material fact and that it was entitled to judgment as a matter of law. State Farm urged that it did not provide UM coverage to plaintiffs on the date of the accident because the policy of insurance at issue had expired prior to the date of the accident. Attached to State Farm's motion for summary judgment were various documents. State Farm policy number 487 7495-A15-18, issued to plaintiffs, covering a 1987 Mercury Lynx, was attached to the motion, along with an affidavit from Ed LaSyone, underwriting/operations superintendent for State Farm, which indicated, in part, as follows:
This certifies that policy number 487 7495-A15-18, covering a 1987 Mercury, was issued to JOSEPH C ADAMSON JR of PO BOX 1042 PATTERSON LA XXXXX-XXXX and was NOT in effect on the accident date of July 23, 1992. The coverages and limits of liability for this policy were: Liability A 100/300/100, Medical C25000, full Comprehensive D, $100 deductible Collision G100, Emergency Road Service H, and Uninsured Motorist U 100/300.
I further certify that the January 15, 1992 Renewal was billed on or about December 12, 1991. The January Renewal was paid continuous coverage on the 50/50 *229 payment plan, with the second half due March 15, 1992. The balance of $226.85 was not paid by March 15, 1992; and on April 1, 1992 a Cancellation Notice was sent informing Mr Adamson that the policy would cancel effective April 15, 1992. The balance was paid, and the policy was reinstated time out of force from April 15, 1992 to April 20, 1992. A Reinstatement Notice was issued with a refund of $12.66 for the time out of force credit. This continued the policy to July 15, 1992.
The July 15, 1992 Renewal Notice was issued on or about June 12, 1992. The renewal was not paid and on July 28, 1992 an Expiration Notice was sent notifying Mr Adamson that his policy EXPIRED effective July 15, 1992.
The affidavit, renewal notice, cancellation notice, reinstatement notice, and expiration notice were all attached to the policy.[4]
In opposition to State Farm's motion for summary judgment, plaintiffs submitted the declarations page of policy number 487 7495-A15-18; the April 1, 1992, cancellation notice; the April 23, 1992, reinstatement notice; the renewal notice; identification cards, showing a renewal effective date of July 15, 1992; copies of State Farm's uncashed drafts payable to plaintiffs and their attorney in the amounts of $871.00 and $10,000.00; the July 28, 1992, expiration notice; and a "Certificate of No Coverage" signed by Ed LaSyone, underwriting/operations superintendent of State Farm. The certificate states, in part, as follows:
This certifies that policy number 487 7495-A15-18, covering a 1987 Mercury, was issued to JOSEPH C ADAMSON JR of PO BOX 1042 PATTERSON LA XXXXX-XXXX and was NOT in effect on the accident date of July 23, 1992.
I further certify, that according to our available records, the renewal notice for the July 15, 1992 renewal was sent to the above latest known address on or about June 11, 1992. Mr. Adamson did not pay the amount due and on or about July 28, 1992, he was sent an expiration notice, notifying him that if the premium was paid on or before August 8, 1992, his policy would be continued with continuous coverage. We did not receive the premium to pay the renewal by August 8, 1992; therefore, the Policy # 487 7495-A15-18 lapsed as of July 15, 1992. Therefore, there was NO Coverage on the date of loss of July 23, 1992.
On May 22, 1995, plaintiffs filed a motion for declaratory relief, requesting a determination that the State Farm policy, number 487 7495-A15-18, provided UM coverage to plaintiffs for the policy period of July 15, 1992, through January 15, 1993, and that plaintiffs had UM coverage with limits of $100,000/300,000 and medical payments coverage of $25,000 on the date of the accident, July 23, 1992.
On June 15, 1995, the parties filed a stipulation of facts, stipulating to the following:
A. Policy No. 487 7495-A15-18 was issued to Adamson for policy period July 15, 1991, to January 15, 1992.
B. Adamson failed to pay for the policy, and it was canceled with a cancellation notice for non-payment of premium effective April 15, 1992.
C. Adamson subsequently paid the premium, and the policy was reinstated on April 20, 1992.
D. Adamson was involved in an automobile accident on July 23, 1992, while driving a vehicle, owned by his employer, during the course and scope of his employment, in Amelia, Louisiana.
E. On or about June 11, 1992, a renewal notice was sent to Mr. Adamson, stating that full payment by due date (July 15, 1992) continues this policy in force until January 15, 1993.
F. Mr. Adamson did not pay the amount due before July 15, 1992, and, on or about July 28, 1992, five (5) days after the July 23, 1992, accident, Adamson was sent an *230 expiration notice, notifying him that, if the premium was paid on or before August 8, 1992, his policy would be continued with continuous coverage.
On June 15, 1995, a hearing was held on the motions for summary judgment and declaratory judgment. On August 31, 1995, the trial court granted State Farm's motion for summary judgment.[5] In reasons for judgment, the trial court stated, in part, as follows:
[P]laintiffs have failed to raise a genuine issue of material fact as to ... [the policy's] expiration date. State Farm has submitted the affidavit of Ed LaSyone, its underwriting/operations superintendent, wherein it is clearly stated that this policy expired on July 15, 1992 due to non-payment of the premium. In support of his position, Joseph Adamson submits a State Farm Insurance renewal card which was sent to him on June 11, 1992, and which states an effective date of July 15, 1992 and an expiration date of January 15, 1993; the back of the card, however, states "THIS CARD IS INVALID IF THE POLICY FOR WHICH IT WAS ISSUED LAPSES OR IS TERMINATED." According to the stipulations of the parties, full payment of the premium was due July 15, 1992 and Joseph Adamson failed to pay the premium on that date. On July 28, 1992, State Farm sent Joseph Adamson an expiration notice which stated that his policy would be continued with continuous coverage if the premium was paid by August 8, 1992; no premium was paid by August 8, 1992, thus Joseph Adamson's policy lapsed on July 15, 1992, the renewal date. Had Joseph Adamson paid the premium by August 8, 1992, he would have been insured effective July 15, 1992, but this he did not do.
A written judgment was signed on September 19, 1995, granting State Farm's motion for summary judgment and dismissing plaintiffs' claims with prejudice.
Plaintiffs appealed from the trial court judgment, assigning as error the trial court's determination that, when plaintiffs failed to pay the premium on the renewal policy by August 8, 1992, the policy lapsed retroactive to July 15, 1992, and that, therefore, there was no coverage in effect on the day of the accident.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322 p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618; Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La. 4/29/94); 637 So.2d 467; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966;[6]Potter v. First *231 Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Kidd v. Logan M. Killen, Inc., 640 So.2d at 618-19.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Miramon v. Woods, 25-850 p. 10 (La.App. 2nd Cir 6/22/94); 639 So.2d 353, 359; Jarrell v. Carter, 632 So.2d at 323.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583; Kidd v. Logan M. Killen, Inc., 640 So.2d at 619. In determining whether material facts had, in fact, been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This was true even if grave doubt existed as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court was presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences were required to be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in LSA-C.C.P. art. 966 A(2) the following:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. (emphasis added.)
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, *232 Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

COVERAGE
On appeal, plaintiffs argue that State Farm failed to validly cancel plaintiffs' policy. In support of this contention, plaintiffs rely on Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241 (La.App. 3rd Cir. 1991); Ledbetter v. Myers, 438 So.2d 700 (La.App. 2nd Cir.1983); Carroll v. State Farm Mutual Automobile Insurance Company, 419 So.2d 57 (La.App. 2nd Cir.1982); Cockern v. Government Employees Insurance Company, 415 So.2d 330 (La.App. 2nd Cir.1982); and Taylor v. MFA Mutual Insurance Company, 322 So.2d 842 (La.App. 2nd Cir.1975), affirmed, 334 So.2d 402 (La. 1976).
Plaintiffs reliance on these cases is misplaced. Each of these cases addresses the cancellation of a policy of insurance during the policy period. Cancellation of automobile liability insurance policies is addressed in LSA-R.S. 22:636.1 B, which provides, in part, as follows:
(1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
* * * * * *
(2) This Subsection shall not apply to nonrenewal or to any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy.
LSA-R.S. 22:636.1 D also addresses cancellation and provides as follows:
(1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given.... This Subsection shall not apply to nonrenewal. (emphasis added.)
The court, in Green v. McCollum, 535 So.2d 8, 9 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1222 (La.1989), explained the term "cancellation" as follows:
Cancellation implies that a policy is being disrupted for some reason, and terminated prior to its anticipated termination date.
Moreover, the court, in Arceneaux v. Broussard, 319 So.2d 846, 849 (La.App. 1st Cir. 1975), explained that:
Cancellation is, as the trial judge aptly defined, a "disruption" or "termination" of coverage and when initiated by the insurer requires that the notice prescribed by the statute be given. The insurer is under a duty of strict compliance in that situation.
However, when a policy expires from the running of its term, it is not being disrupted, but is instead dying a natural death. Green v. McCollum, 535 So.2d at 9. As a result, the issue presented is one which deals with the renewal of a policy rather than the cancellation of one. In such instances, the statutory provisions regarding renewal are applicable. An insurer's obligations regarding renewal of a policy are addressed in LSA-R.S. 22:636.1 E, which provides, in pertinent part, as follows:
E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This Subsection shall not apply: (a) if the insurer has manifested its willingness to renew; or (b) in case of nonpayment of premium; provided that, notwithstanding the failure of an insurer to comply with this Subsection, the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies. (emphasis added.)
The jurisprudence is clear that, when an insured purchases a policy, he is or should be aware of the term of that policy. He has no right to expect that that policy will continue in effect until he decides to pay another premium. Green v. McCollum, 535 So.2d at 9.
*233 In the instant case, by its own terms, plaintiffs' insurance policy was to remain in effect until July 15, 1992. By sending a renewal notice to plaintiffs on June 11, 1992, with a due date of July 15, 1992, State Farm manifested to plaintiffs a willingness to renew their policy and continue coverage through January 15, 1993, if plaintiffs paid the renewal premium by July 15, 1992. The renewal notice sent to plaintiffs states that, if the renewal premium was not paid by the due date of July 15, 1992, the policy would expire on that date. Thus, plaintiffs were given the option of continuing or terminating coverage. At that point, State Farm was obligated to renew the policy only if plaintiffs indicated their desire to renew the coverage and made payment of the premium on or before July 15, 1992. Plaintiffs' failure to make timely payment caused the policy to lapse by its own terms on July 15, 1992.
Even after the policy lapsed, State Farm gave plaintiffs the opportunity to pay the premium within twenty-two days of July 15, 1992, and State Farm offered to provide coverage from the date of payment through January 15, 1993. However, plaintiffs did not pay the premium within that time period.
Based on the foregoing, State Farm proved that the policy was not in effect on the date of plaintiff's accident, July 23, 1992. See Fontenot v. Cole, 586 So.2d 730, 732 (La.App. 3rd Cir.1991); Green v. McCollum, 535 So.2d at 9; Morill v. K. & M. Services, Inc., 524 So.2d 263, 264 (La.App. 5th Cir. 1988); Soileau v. Louisiana Farm Bureau Casualty Insurance Company, 476 So.2d 1098, 1099 (La.App. 3rd Cir.1985); Habetz v. Louisiana Farm Bureau Mutual Insurance Company, 458 So.2d 1002, 1003 (La.App. 3rd Cir.1985); Edwards v. York, 370 So.2d 641, 643 (La.App. 4th Cir.1979); Arceneaux v. Broussard, 319 So.2d at 849-50; Morton v. Myers, 276 So.2d 378, 379-80 (La.App. 2nd Cir.1973); Borne v. Dillon, 201 So.2d 115, 119 (La.App. 4th Cir.1967).
Plaintiffs further contend that the policy did not expire at the end of its term, but was renewed when State Farm sent plaintiff the insurance identification cards in June of 1992, which noted a policy period of July 15, 1992, to January 15, 1993. Plaintiffs argue that the transmittal by State Farm of the identification cards was proof that the policy had been renewed. We disagree.
LSA-R.S. 32:863.1 mandates that all operators of vehicles have with them in the vehicle evidence that the vehicle is insured. One type of evidence is an identification card issued by the insurer, noting the name and address of the insurer, the policy number, a description of the insured vehicle, and the effective and expiration dates of the policy. LSA-R.S. 32:863.1 A(1)(a). As pointed out by State Farm in brief, identification cards are provided to the insured to fulfill his obligation under LSA-R.S. 32:863.1, not to acknowledge actual renewal of the policy. Generally, identification cards are issued in anticipation of renewal and are sent to the insured with the renewal notice or sometime shortly after the notice is sent. As noted by the trial court, the back of the identification card sent to plaintiffs clearly states that "THIS CARD IS INVALID IF THE POLICY FOR WHICH IT WAS ISSUED LAPSES OR IS TERMINATED."
Based on the documentary evidence submitted by State Farm in support of its motion for summary judgment, we conclude that State Farm proved its entitlement to summary judgment as a matter of law. Because State Farm did not provide UM coverage to plaintiffs on July 23, 1992, the date of the accident, State Farm was properly dismissed from the suit via summary judgment.

DISMISSAL OF STATE FARM
We note that suit was filed against State Farm in two capacities, namely as UM insurer of Hebert's truck and as UM insurer under plaintiffs' personal automobile insurance policy.
The only issue before the court on the motion for summary judgment was the coverage issue on plaintiffs' personal UM insurance, and the trial court determined that the policy had lapsed, and we agree. Accordingly, the trial court properly dismissed plaintiffs' claims against State Farm, as plaintiffs' personal UM insurer.
However, the record contains evidence that State Farm has tendered certain funds *234 to plaintiffs as UM insurer of Hebert's truck, but that those funds have not been negotiated by plaintiffs. Moreover, State Farm has not been dismissed from the litigation in its capacity as UM insurer of Hebert's truck.
Therefore, we find that the judgment on the motion for summary judgment, which purports to dismiss, with prejudice, plaintiffs' claims in this litigation against State Farm, is limited to State Farm's liability on plaintiffs' personal UM policy only.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Mariela Adamson claimed damages for loss of consortium.
[3] Car Insurance Company was incorrectly named in the petition as Automotive Casualty Insurance Company, which was the previous name of the company. During the pendency of these proceedings, Car Insurance Company was placed into liquidation.
[4] Also attached to the motion for summary judgment was State Farm policy number 494 0027-D20-18, issued to plaintiff, covering a 1990 Ford van. Along with the policy is an affidavit of Ed LaSyone, underwriting/operations superintendent for State Farm, indicating that the policy had been canceled effective July 7, 1992, for nonpayment of the balance due. The validity of this cancellation is not before us on appeal.
[5] The motion for declaratory judgment was rendered moot by the trial court's granting of State Farm's motion for summary judgment.
[6] By Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996, LSA-C.C.P. art. 966 was amended and reenacted as follows:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.