685 So.2d 179 (1996)
Joel COLVER
v.
The TRAVELERS INSURANCE COMPANIES and Janice Lenz.
No. 95 CW 1696.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*180 Jeffrey L. Little, Shreveport, for Plaintiff/Respondent, Joel Colver.
W. Shelby McKenzie, W. Arthur Abercrombie, Baton Rouge, for Defendant/Relator, The Travelers Insurance Company.
Daniel Atkinson, Jr., Baton Rouge, for Intervenor/Respondent, Maryland Casualty Company.
Before CARTER, GONZALES, and PARRO, JJ.
CARTER, Judge.
This matter is before us on remand from the Louisiana Supreme Court with instructions to rule on the merits of an application for supervisory writs following the trial court's denial of motions for summary judgment and new trial.

BACKGROUND
Michael Lenz was employed by Bryan Foods, Inc. (Bryan Foods), a subsidiary of Sara Lee Corporation (Sara Lee). Lenz was assigned a company car, a 1991 Chevrolet Caprice, which had been leased to Sara Lee. This vehicle was the only auto available to Lenz for his use. An accident occurred when Michael Lenz's wife, Janice, was operating the leased vehicle. The Travelers Insurance Company (Travelers) had previously issued a business automobile liability insurance policy to Sara Lee.

FACTS
On or about December 24, 1991, Joel Colver was driving a pick-up truck in a southerly direction on Wooddale Boulevard in Baton Rouge. At the time, the right lane of Wooddale Boulevard was under construction and *181 closed to through traffic. The Colver vehicle stopped in the right lane of Wooddale Boulevard and displayed caution, warning, and/or hazard lights. Janice Lenz was proceeding south on Wooddale Boulevard in the automobile leased to her husband's employer. As Janice Lenz approached the Colver vehicle, she failed to stop and rear-ended the Colver vehicle, injuring Colver.
On March 30, 1992, Colver filed a petition for damages. Named as defendants were Janice Lenz and Travelers. Travelers answered Colver's petition, denying the allegations, asserting that the policy of insurance did not afford coverage to Janice Lenz, and alleging that Colver's own negligence contributed to the accident.[1]
On September 9, 1992, Travelers filed a motion for summary judgment, alleging that the policy of insurance issued to Sara Lee did not afford coverage to Janice Lenz. Travelers contended that because Janice Lenz did not have permission to operate the automobile there was no coverage for her under the Traveler's policy. Colver defended the motion for summary judgment, alleging that the "Drive Other Car Coverage" endorsement was applicable to "employees who have a company car which is their sole vehicle for personal use." Colver reasoned that, because the automobile Janice Lenz was driving was the only vehicle the Lenzes had available, coverage was afforded to Janice Lenz under the "Drive Other Car Coverage" endorsement. Travelers argued that the endorsement was inapplicable because the evidence established that the Lenzes did not have permission from the named insured to use the company car for personal reasons.
After a hearing, the trial court granted Travelers' motion for summary judgment and dismissed Colver's suit against Travelers with prejudice. Pursuant to a motion for new trial filed by Colver, the trial court granted the new trial to permit the introduction of supporting affidavits, depositions, and the insurance policy, then rendered judgment in favor of Travelers and dismissed Colver's suit against Travelers. Colver appealed this adverse judgment.
In an unpublished opinion in Colver v. Travelers Insurance Companies, 93-1087 (La.App. 1st Cir. 3/24/94); 636 So.2d 642, writ denied, 94-1624 (La.9/30/94); 642 So.2d 879, this court reversed the trial court judgment, noting that the "Drive Other Car Coverage" portion of the Travelers policy provided coverage to "employees who have a company car which is their sole vehicle for personal use, including his or her spouse and family members while residents of the same household." This court reasoned that, because Lenz had a company car, which was his sole car for personal use, the language of the Travelers policy extended coverage to Lenz or his spouse when he or she used the company car for personal reasons, regardless of whether Bryan Foods intended its employees to use the company vehicles for personal reasons. Accordingly, this court concluded that the Travelers policy afforded coverage and that the trial court erred in granting Travelers' motion for summary judgment.
On March 6, 1995, Travelers again filed a motion for summary judgment. Travelers asserted that, at the time of the accident, Janice Lenz was operating the automobile without permission. Travelers reasoned that, because the Business Auto Coverage provision of the policy requires permission of the named insured, coverage does not extend to Janice Lenz. Travelers further asserted that the protection afforded under the "DRIVE OTHER CAR COVERAGEBROADENED COVERAGE FOR NAMED INDIVIDUALS" portion of the policy does not afford coverage to her. Attached to Travelers' motion were the affidavit of Larry Fretz, Bryan Foods' manager of fleet safety, and the depositions of Michael and Janice Lenz. Fretz's affidavit reflects that the subject vehicle was leased to Bryan Foods and Sara Lee. The deposition testimony of Michael Lenz reveals that, at the time of the accident giving rise to this litigation, he had no personal vehicle. Lenz noted that, although he never instructed Janice not to *182 drive the company auto, it was a known fact that no one, other than a Bryan Foods employee, was authorized to operate the company auto. Lenz stated that he did not give Janice permission to use the company auto. According to Lenz, Bryan Foods' policy prohibited him from using the company auto for personal reasons. Janice Lenz's deposition testimony revealed that she was aware that Bryan Foods' policy prohibited her use of the company auto. Janice also advised that, on December 24, 1991, she drove the company auto without her husband's permission.
After a hearing, the trial court rendered judgment, denying Travelers' motion for summary judgment. Pursuant to a motion for new trial filed by Travelers, the trial court rendered judgment, denying Travelers' motion for new trial. Travelers filed an application for writs of review, which this court denied in Colver v. Travelers Insurance Companies, 95-1696 (La.App. 1st Cir. 11/30/95); 667 So.2d 1234.[2] On February 16, 1996, under docket number 95-3123, the Louisiana Supreme Court remanded the matter to this court for supplementation of the record and disposition of the matter on the merits of the writ application.
By order, dated June 28, 1996, this court granted a writ of certiorari, ordered the district court to supplement the record, and referred the matter to a regular docket.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322 p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618; Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94); 637 So.2d 467; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Kidd v. Logan M. Killen, Inc., 640 So.2d at 618-19.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Miramon v. Woods, 25,850 p. 10 (La.App. 2nd Cir. 6/22/94); 639 So.2d 353, 359; Jarrell v. Carter, 632 So.2d at 323.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583; Kidd v. Logan M. Killen, Inc., 640 So.2d at 619. In determining whether material facts had, in fact, been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. *183 Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This was true even if grave doubt existed as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court was presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences were required to be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in LSA-C.C.P. art. 966 A(2) that:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. (Emphasis added.)
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988). Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Domingue v. Reliance Insurance Co., 619 So.2d 1220, 1223 (La.App. 3rd Cir.1993); Alford v. Kaiser, 589 So.2d 546, 548 (La.App. 1st Cir.1991), writ denied, 594 So.2d 893 (La.1992).

BUSINESS AUTOMOBILE LIABILITY INSURANCE COVERAGE
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Ledbetter v. Concord General Corp., 95-0809 p. 3 (La.1/6/96); 665 So.2d 1166, 1169, amended, 93-0809 (La.4/18/96); 671 So.2d 915; Dunn v. Potomac Insurance Company of Illinois, 94-2202 p. 5 (La.App. 1st Cir. 6/23/95); 657 So.2d 660, 663. Judicial responsibility in interpreting contracts is to determine the common intent of the parties. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 p. 5 (La.1/14/94); 630 So.2d 759, 763.
The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. LSA-C.C. art. 2047; Ledbetter v. Concord General Corp., 665 So.2d at 1169. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Epps v. City of Baton Rouge, 604 So.2d 1336, 1349 (La.App. 1st Cir.1992). An insurance contract should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Coates v. Northlake Oil Company. Inc., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La. 1987). If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Sanders v. Ashland Oil, Inc., 94-1469 p. 6 (La.App. 1st Cir. 5/5/95); 656 So.2d 643, 647, writ denied, 95-1797 (La.11/3/95); 661 So.2d 1389.
Generally, the purpose of liability insurance is to afford the insured protection from damage claims. Breland v. Schilling, 550 So.2d 609, 610 (La.1989); Sanders v. Ashland Oil, Inc., 656 So.2d at 647. Policies therefore should be construed to effect, and not to deny, coverage. Reynolds v. Select Properties, Ltd., 93-1480 p. 3 (La.4/11/94); 634 So.2d 1180, 1183. Any ambiguous provisions *184 in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Smith v. Matthews, 611 So.2d at 1379. If the language of an exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991).
In the instant case, there are no cross-motions for summary judgment. The party requesting summary judgment is Travelers; therefore, the issue presented is not whether the liability insurance policy affords coverage to Janice Lenz for Colver's injuries. Rather, in its current procedural posture, the only issue before the court is whether the liability insurance policy issued by Travelers does not afford coverage to Janice Lenz for Colver's injuries. In resolving this issue, we must examine the applicable policy provisions.
The "Business Auto Coverage Form, Section IILiability Coverage," Part A provides that Travelers "will pay all sums an `insured' legally must pay as damages because of `bodily injury' ... to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'"
The "Business Auto Coverage Part" declarations and the "Business Auto Coverage Form" reflect that coverage under the Travelers policy is applicable to any auto.[3]
Definitions of terms are set forth in Section V of the policy. Paragraph D of that Section shows that "insured" means "any person or organization qualifying as an insured in the Who is An Insured provision of the applicable coverage." "Section IILiability Coverage," Part A(1) defines an "insured" as follows:
WHO IS AN INSURED
The following are "Insureds":
a. You for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow....
"You" and "Your" are defined in the policy as the named insured, Sara Lee or Bryan Foods.[4]
There are numerous endorsements which modify the "Business Auto Coverage Form." Each endorsement appears to broaden the definition of "insured" under the Travelers policy. One endorsement, CA 99 13 01 87, adds to the Liability Coverage WHO IS AN INSURED provision and provides that "[a]ny employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs." A "Drive Other Car Coverage" endorsement, CA 99 10 12 90, broadens the definition of an insured to provide that "[a]ny individual named in the Schedule and his or her spouse, while a resident of the same household, are `insureds' while using any covered *185 `auto' described in paragraph B.1 of the endorsement." Paragraph B of the endorsement addresses changes in liability coverage and provides as follows:
1. Any "auto" you don't own, hire or borrow is a covered "auto" for LIABILITY COVERAGE while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:
a. Any "auto" owned by that individual or by any member of his or her household.
b. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos."
Two schedule extensions of endorsement CA 99 10 12 90, which address "Drive Other Car CoverageBroadened Coverage for Named Individuals," are attached to the policy. One schedule extension, issued August 23, 1991, reflects that the individuals afforded protection are "employees who have a company car which is their sole vehicle for personal use." The other schedule extension, issued October 30, 1991, adds to the individuals afforded protection "employees who have a company car which is their sole vehicle for personal use, including his or her spouse and family members while residents of the same household." (Emphasis added.) Paragraph A of the "Hired Autos Specified as Covered Autos You Own" endorsement, CA 99 16 01 87, provides that "[a]ny `auto' described in the Schedule will be considered a covered `auto' you own and not a covered `auto' you hire, borrow or lease under the coverage for which it is a covered `auto.'" The Schedule describes the auto covered by this endorsement as "all autos which the insured hires, rents or borrows." Paragraph B of the endorsement addresses changes in liability coverage and provides that:
The following is added to WHO IS AN INSURED:
While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto."
A review of the provisions of the Travelers policy reveals that the 1991 Chevrolet Caprice leased to Bryan Foods/Sara Lee is a covered auto under the express terms of the policy. However, what is unclear is whether Janice Lenz was an insured under the Travelers policy.
The policy indicates that Sara Lee and Bryan Foods are the named insureds and that anyone using a company auto with their permission is insured. The numerous policy endorsements sought to expand and broaden the persons included as insureds under the Travelers policy. The policy indicates that the spouses and family members of employees who have a company automobile which is their sole vehicle for personal use are insureds under the drive other car policy provisions.
Although Lenz was provided with a company auto and he had no personal vehicle available for his use, Travelers' position is that Janice Lenz was not authorized to use the vehicle and, as such, was not an insured under its policy. Travelers also reasons that, because Janice Lenz was operating the insured vehicle, the "drive other car" provisions do not apply. However, Travelers posits that, under its policy provisions, Janice Lenz would have been insured if she had been operating a neighbor's auto, but, because she used the company auto, she was not insured. In other words, Travelers affords coverage to Janice Lenz when she drives a stranger's auto, but does not afford that same individual coverage when she operates an insured vehicle. Such an interpretation leads to an absurd result.
We have carefully reviewed the entire insurance policy in this matter, together with the evidence presented in support of Travelers' motion for summary judgment. We cannot say that the policy unambiguously precludes coverage. As such, the motion for summary judgment was properly denied.

CONCLUSION
For the reasons set forth above, the writ previously issued is recalled, and Travelers' writ application is denied.
WRIT DENIED.
NOTES
[1] Various other pleadings were filed, none of which are pertinent to the issues presented in this writ application.
[2] This court denied the writ application on the showing made, noting in a per curiam opinion that the application did not contain a copy of the entire insurance policy. The court reasoned that, absent a complete copy of the policy, a review of its language and a correct interpretation of the policy provisions could not be made.
[3] The policy provides as follows: SECTION I COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."
Item Two of the declarations provides as follows:
A. COVERAGE AND LIMITS OF INSURANCE:
Coverage applies only to those Autos shown as Covered Autos by entry of one or more Symbols from SECTION ICovered Auto of the BUSINESS AUTO COVERAGE FORM

 COVERED
 AUTO LIMITS OF
COVERAGE SYMBOL INSURANCE
 The most we
 will pay for
 any one accident
 or loss.
LIABILITY 1 $3,000,000

Section I A of the "Business Auto Coverage Form" sets forth the description of covered auto designation symbols as follows:
SYMBOL DESCRIPTION
1 = ANY "AUTO"

[4] Paragraph A(1) of "Section IILiability Coverage" was amended by a policy endorsement to add the following:

D. Your existing subsidiaries and any organization you newly acquire or form, over which you maintain ownership or majority interest, and any partnership or joint venture not specifically excluded by endorsement, will be deemed to be named insured if there is no other similar insurance available to that organization.