690 So.2d 145 (1997)
BELLSOUTH TELECOMMUNICATIONS, INC.
v.
INDUSTRIAL ENTERPRISES, INC.
No. 96 CA 0682.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*147 Kirsten B. David, Baton Rouge, for Defendant-Appellant Industrial Enterprises, Inc.
Laura C. Broders, Wayne T. McGaw, New Orleans, for Plaintiff-Appellee BellSouth Telecommunications, Inc.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
PITCHER, Judge.
Defendant, Industrial Enterprises, Inc. (IE), appeals from the granting of summary judgment in favor of plaintiff, BellSouth Telecommunications, Inc. (BST). The summary judgment awarded BST $5,981.70 for damages sustained to BST's underground cables as a result of IE's excavation operations. We affirm.

BACKGROUND AND PROCEDURAL HISTORY
On December 30, 1994, BST filed a petition for damages alleging that, in two separate incidents occurring on March 17, 1994, and March 31, 1994, IE's employees had damaged BST's underground cables during excavation with heavy equipment to construct a sewer system. BST further alleged that these damages occurred in spite of a proper locate which was provided pursuant to a call to the Louisiana One-Call Center.
On August 11, 1995, BST filed a supplemental and amending petition, alleging three (3) additional incidents in which IE's employees had damaged BST's underground cables during excavation with heavy equipment.[1] On August 21, 1995, IE filed an answer to BST's petitions, generally denying the allegations contained therein.
Subsequently, BST filed a motion for summary judgment as to the March 17, 1994 incident. In its motion for summary judgment, BST alleged that IE's failure to wait the statutorily prescribed forty-eight hours for proper location of BST's underground telephone facilities breached IE's duty under LSA-R.S. 40:1749.11 et seq. (Louisiana Underground Utilities and Facilities Damage Prevention Law). BST further alleged that, as a result of the breach of duty, BST's property was damaged; therefore, IE was liable for the damages.
A hearing on the motion for summary judgment was held on January 22, 1996. Following the hearing, the court granted BST's motion for summary judgment and ordered IE to pay damages in the amount of $5,981.70, plus legal interest from the date of judicial demand. It is from this judgment that IE appeals.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618. It is well settled that the granting of summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lewis v. Diamond Services Corporation, 93-1150, p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 825, 828, writ denied, 94-1638 (La. 10/14/94); 643 So.2d 159.
*148 A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, 640 So.2d at 619.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619. To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts had, in fact, been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This was true even if grave doubt existed as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court was presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences were required to be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991). However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in § A(2) the following:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, a Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).
Louisiana Revised Statute 40:1749.13 provides, in pertinent part, as follows:
A. Except as provided in this Section, no person shall excavate or demolish in any street, highway, public place or servitude of any operator, or near the location of an underground facility or utility, or on the premises of a customer served by an underground facility or utility without having first ascertained in the manner prescribed in Subsection B of this Section, the approximate location of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.
B. (1) Except as provided in R.S. 40:1749.15, prior to any excavation or demolition, each excavator including cable television owners or operators, shall serve telephonic notice of the intent to excavate or demolish to the regional notification center or centers serving the area in which the proposed excavation or demolition is to take place. Such notice shall be given to the notification center at least forty-eight hours, but not more than one hundred twenty hours, excluding weekends and holidays, in advance of the excavation or demolition activity....

* * * * * *
(4) Notice shall be given and shall include a specific location request for excavation or demolition work to be performed at *149 least forty-eight hours, but not more than one hundred twenty hours, excluding weekends and holidays, in advance of actual work commencement.... The marking of an operator's facility or utility shall be provided for excavation or demolition purposes only.
The only exception to the notification requirement is for an emergency excavation to ameliorate an imminent damage to life, health, or property. LSA-R.S. 40:1749.15.
Once notice is given under LSA-R.S. 40:1749.13, the regional notification center notifies all member operators having underground facilities near the proposed site. LSA-R.S. 40:1749.14 B. Furthermore, LSA-R.S. 40:1749.14 C provides, in pertinent part, as follows:
C. (1) Each operator of an underground facility or utility, after having received the notification request from the regional notification center of an intent to excavate, shall supply, prior to the proposed excavation, the following information to the person responsible for the excavation:
(a) The approximate location and type of all of its underground facilities which may be damaged as a result of the excavation or demolition.
(b)(i) Unless otherwise required by federal or state statutes, the approximate location and type of underground facility may, at the operator's option, be marked to locate the facilities. If the facilities are visibly marked by the operator, they shall be marked by the operator by color coded paint, flags, or stakes or similar means using the American Public Works Association color code.
* * * * * *
(2) If the operator does not visibly mark the location of these facilities or utilities, the operator must take action or provide information to enable an excavator using reasonable and prudent means to determine the approximate location of the facility or utility. The information provided by the operator shall include a contact person and a specific telephone number for the excavators to call. After the operator has received the notification request, the information on location, size, and type of underground facility must be provided by the operator to the excavator prior to excavation.
In Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1992) (on rehearing), the Louisiana Supreme Court held that, in order to prevail on a negligence claim under LSA-C.C. articles 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred. Roberts v. Benoit, 605 So.2d at 1052. The critical test for legal cause in Louisiana is phrased in terms of the "ease of association" which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant? The essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty. Roberts v. Benoit, 605 So.2d at 1054.
The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily *150 the risk of injury to plaintiff can be associated with the duty sought to be enforced.
Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 293-294 (La.1993) (citations omitted).
Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential or arising from general principles of faultto support his claim. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d at 292.
According to the affidavit of Vincent DiPuma, the IE superintendent in charge of the project in Donaldsonville, IE called the regional notification center (Louisiana One-Call) at approximately 4:00 p.m. on March 16, 1994, to notify them of its intent to excavate a site in Donaldsonville on Highway 1. On the morning of March 17, 1994, Mr. DiPuma observed orange markings in and around the job site. The record indicates that the orange markings are customarily used to denote telephone utilities. According to Mr. DiPuma, he had witnessed BST and other utilities make markings in the area prior to March 16, 1994. Mr. DiPuma also noted that every time he witnessed BST locate utilities in the area, he saw them paint over the pre-existing orange markings. Because the orange markings were in the same location and were consistent with a copy of the plans which showed the location of utilities, Mr. DiPuma authorized his crew to begin excavation on the morning of March 17, 1994.
The affidavit of Mr. DiPuma establishes that IE failed to meet the duties imposed on it by the Louisiana Underground Utilities and Facilities Damage Prevention Law and that such failure was a legal cause of BST's damages. After IE contacted the regional notification center and gave notice of its intent to excavate, IE proceeded with its excavation before receiving information as to the approximate location and type of underground facilities as required by LSA-R.S. 40:1749.14 C(1)(a).[2]
Additionally, the affidavit of Richard L. Richardson, manager of claims with BST, as to which there is no contradictory evidence of record, establishes damages attributable to the March 17, 1994 excavation at the job site located in Donaldsonville on Highway 1 in the amount of $5,981.70. Thus, IE's actions were also a cause-in-fact of BST's damages.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Industrial Enterprises, Inc.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur. When Industrial Enterprises did not allow BellSouth Telecommunications 48 hours between notification and excavation, Industrial Enterprises breached the duty owed to BellSouth. BellSouth's telephone lines were damaged by the premature excavation. As to those points, no genuine issues of material fact exist. Thus, Industrial Enterprises is liable, and summary judgment was proper.
NOTES
[1] These incidents were alleged to have occurred on September 19, 20, and 22, 1994.
[2] In addition to supplying the approximate location and type of all of its underground facilities to the person responsible for the excavation, each operator may also mark its underground facilities with appropriate colors after receiving notification.