835 So.2d 685 (2002)
MORTON BUILDING, INC.
v.
REDEEMING WORD OF LIFE CHURCH and David M. Diamond.
Redeeming Word of Life Church, Inc.
v.
Morton Buildings, Inc. and John B. Dunlap, III.
No. 2001 CA 1836, 2001 CA 1837.
Court of Appeal of Louisiana, First Circuit.
October 16, 2002.
*686 John B. Dunlap, Scott E. Mercer, Baton Rouge, for Plaintiff/Appellee, Morton Building, Inc.
Murphy J. Foster, III, Steven B. Loeb, for Defendant/Appellant, Redeeming Word of Life Church.
Before: WHIPPLE, LANIER and CIACCIO, JJ.[1]
WHIPPLE, J.
Defendant, Redeeming Word of Life Church, appeals from a judgment of the trial court, annulling a final judgment in its favor on the finding that the earlier judgment was obtained through ill practices. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1994, Reverend David Diamond, pastor of Redeeming Word of Life Church, Inc. (Redeeming Word), entered into design and construction contracts with Morton Buildings, Inc. (Morton Buildings) for the design and construction of a gymnasium and educational building.
Before construction began, the parties became aware that the proposed elevation for the building as set forth in the plans did not comply with the building code for the City of Baton Rouge/Parish of East Baton Rouge (City/Parish) and that it would be necessary to construct the building *687 at an elevation over two feet higher than that proposed in order to comply with the building code.
Due to cost constraints, Morton Buildings, through its representative, agreed to apply for a flood variance on behalf of Redeeming Word along with the building permit, requesting that the church be allowed to construct the gymnasium at the lower elevation. When a building permit was subsequently issued, Morton Building assumed that the variance had also been granted and, accordingly, began construction of the gymnasium at the lower elevation.
However, when construction of the building was approximately 90% complete, the Department of Public Works for the City/Parish denied the application for a flood variance for construction of the gymnasium. Because the building, as constructed, was not in compliance with the building code and a variance was not granted, Redeeming Word was unable to obtain a certificate of permanent occupancy upon completion of construction.
Due to the church's inability to obtain a certificate of permanent occupancy, Reverend Diamond, on behalf of Redeeming Word, refused to make final payment on the construction contract, design services contract and a change order. Morton Buildings then filed suit against Redeeming Word seeking payment on the contracts. Redeeming Word reconvened against Morton Buildings alleging breach of the construction contract and seeking return of the contract price and damages.
Following trial, the trial court found that construction of the building was substantially complete, thus entitling Morton Buildings to payment on the contracts. The court further found that while Morton Buildings had undertaken to help Redeeming Word secure the building permit and flood variance, it had no duty to guarantee that the variance would be granted. Thus, the trial court found no breach of contract by Morton Buildings and denied Redeeming Word's reconventional demand.
On appeal, this court reversed the trial court's judgment in its entirety. Morton Buildings, Inc. v. Redeeming Word of Life Church, Inc., 97-2251, p. 12 (La.App. 1st Cir.11/6/98), 744 So.2d 5, 12, writ denied, 99-0687 (La.4/30/99), 741 So.2d 16. With regard to Morton Buildings' demand, this court concluded that, because the building could not serve its intended purpose at its present elevation, Morton Buildings had not substantially performed the contract. This court noted that Redeeming Word was occupying the building at the time of trial pursuant to a temporary occupancy permit, but that Reverend Diamond had testified that the temporary occupancy permit was granted only for the duration of the litigation. Morton Buildings, Inc., 97-2251 at p. 5 n. 3, 744 So.2d at 8 n. 3. Thus, this court concluded, because the building was not fit for its intended purpose, Morton Buildings had failed to prove its entitlement to payment on the construction contract. Morton Buildings, Inc., 97-2251 at p. 11, 744 So.2d at pp. 11-12. Additionally, with regard to Redeeming Word's reconventional demand, this court further concluded that, while Morton Buildings had no duty to guarantee that a flood variance would be granted, Morton Buildings had breached the duty it assumed of applying for the flood variance by simply assuming that the variance had been granted by virtue of the building permit having been granted and beginning construction without verifying that the variance had in fact been granted. Morton Buildings, Inc., 97-2251 at pp. 10-11, 744 So.2d at 11. Accordingly, this court awarded Redeeming Word a return of all sums paid on the construction contract. Morton Buildings, Inc., 97-2251 at pp. 11-12, *688 744 So.2d at 12. The Supreme Court denied Morton Buildings' writ application on April 30, 1999. Morton Buildings, Inc. v. Redeeming Word of Life Church, Inc., 99-0687 (La.4/30/99), 741 So.2d 16.
After rendition of this court's opinion and a denial of Morton Buildings' writ application by the Louisiana Supreme Court, Morton Buildings filed a petition to nullify the previous judgment in favor of Redeeming Word. Morton Buildings alleged that subsequent to the Supreme Court's denial of its writ application and the resulting finality of this court's prior judgment, Redeeming Word had continued to use and occupy the building and had, in fact, obtained a certificate of permanent occupancy on June 16, 1999.
Morton Buildings alleged that during the pendency of the appeal of the original judgment, Redeeming Word had been informed by an attorney for the City/Parish that the City/Parish would grant Redeeming Word a certificate of permanent occupancy upon Redeeming Word's execution of an indemnification agreement in favor of the City/Parish. Additionally, Morton Buildings alleged that Redeeming Word had, in fact, executed the indemnification agreement in August of 1998, prior to rendition of this court's opinion in the original appeal. Thus, Morton Buildings contended, Redeeming Word's silence to this court and the Supreme Court as to its ability to obtain a certificate of permanent occupancy by mere execution of an indemnity agreement and its continued representation that the building was useless constituted fraud and ill practices pursuant to LSA-C.C.P. art.2004. Accordingly, Morton Buildings claimed that the basis for this court's previous judgment no longer existed.[2]
Following a hearing on cross motions for summary judgment, the trial court denied Redeeming Word's motion for summary judgment, granted Morton Buildings' motion and annulled this court's November 6, 1998 judgment in favor of Redeeming Word pursuant to LSA-C.C.P. art.2004, finding that the prior judgment was obtained by ill practices. From this judgment, Redeeming Word appeals.

SUMMARY JUDGMENT
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). The burden of proof remains with the mover. LSA-C.C.P. art. 966(C)(2).
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Spears v. Jones, 2000-2799, p. 4 (La.App. 1st Cir.2/15/02), 807 So.2d 1182, 1185, writs denied, XXXX-XXXX, XXXX-XXXX (La.5/3/02), 815 So.2d 106, and 826.
*689 In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that governed the trial court's determination of whether summary judgment is appropriate. Bell-South Telecommunications, Inc. v. Industrial Enterprises, Inc., 96-0682, p. 4 (La. App. 1st Cir.2/14/97), 690 So.2d 145, 148.

ANNULMENT OF THIS COURT'S PREVIOUS JUDGMENT
Judgments are not infallible. However, even if an error is made, once a judgment becomes res judicata, it is not reversible on grounds of mere error. Livingston Parish Sewer District No. 2 v. Millers Mutual Fire Insurance Company of Texas, 99-1728, p. 6 (La.App. 1st Cir.9/22/00), 767 So.2d 949, 953, writ denied, 2000-2887 (La.12/8/00), 776 So.2d 1175.
On the other hand, a final judgment obtained by fraud or ill practices may be annulled by filing an action to annul within one year of the discovery of fraud or ill practices. LSA-C.C.P. art. 2004. This article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure. Because an action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or as a second chance to prove a claim that was previously denied for failure of proof, it is imperative that courts review a petition for nullity closely. The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals. Belle Pass Terminal, Inc. v. Jolin, Inc., XXXX-XXXX, p. 5 (La.10/16/01), 800 So.2d 762, 766.
The two criteria that have been set forth jurisprudentially to determine whether a judgment was obtained by actionable fraud or ill practices are: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) enforcement of the judgment would be unconscionable and inequitable. Livingston Parish Sewer District No. 2, 99-1728 at p. 6, 767 So.2d at 953.
"Ill practice" is any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right. The "legal right" of which a litigant must be deprived to have a judgment annulled includes the right to appear and assert a defense and the right to a fair and impartial trial. See Belle Pass Terminal, Inc., XXXX-XXXX at pp. 6-7, 800 So.2d at 766-767;
In the instant case, Reverend Diamond testified at the original trial in this matter that the church had been able to obtain a temporary occupancy permit, but that the certificate was granted only for the duration of the litigation of this matter. Morton Buildings, Inc., 97-2251 at p. 5 n. 3, 744 So.2d at 8 n. 3. Thus, Redeeming Word represented to the trial and appellate courts that it would not be able to legally occupy the building on a permanent basis. Morton Buildings, Inc., 97-2251 at p. 5, 744 So.2d at 8-9.
In granting the summary judgment in favor of Morton Buildings and annulling this court's previous judgment, the trial court found that Redeeming Word had, in fact, entered into a hold-harmless agreement with the City/Parish in August of 1998, approximately three months before this court handed down its original opinion. The trial court further noted that in the hold-harmless agreement, Redeeming Word had agreed that if it were allowed permanent occupancy, it would not seek any reparations or indemnification *690 from the City/Parish for any future damage caused by the lower elevation.[3] The trial court further noted that while there was no guarantee that signing the hold-harmless agreement would result in the obtaining of the certificate of permanent occupancy, signing the agreement was "arguably ... moving [the church] in that direction." Accordingly, the trial court concluded that Redeeming Word's failure to apprise the appellate court of the signing of this document, which could have affected the outcome of the case, constituted ill practice and that equity demanded that the prior opinion of this court be annulled.
On appeal, Redeeming Word contends that the trial court erred in granting summary judgment and nullifying this court's previous judgment when the only alleged grounds for nullification consist of an act or omission (i.e., the failure to notify the court of the execution of a hold-harmless agreement) which occurred after the conclusion of trial on the merits and after the case was submitted to the court of appeal. Citing Hertz v. Nguyen, 609 So.2d 834, 836 (La.App. 5th Cir.1992), Redeeming Word contends that the original judgment of the trial court obviously could not have been obtained through alleged fraud or ill practices based upon alleged acts committed or occurring subsequent to rendition of that judgment.
In Hertz, the appellant argued that appellee's failure to obtain a transcript of the original trial for purposes of the original appeal and an alleged misrepresentation by appellee to the appellate court in the original appeal constituted ill practices entitling it to have the original judgment annulled. Hertz, 609 So.2d at 836. The Fifth Circuit Court of Appeal disagreed, holding that nullity is an appropriate remedy only when the judgment was obtained by fraud or ill practice. Consequently, the appellate court held that the original judgment could not have been obtained through fraud or ill practices allegedly committed subsequent to its rendition. Hertz, 609 So.2d at 836.
At the outset, we note that the Louisiana Supreme Court has held that counsel has a continuing duty to inform the court, including the appellate courts, of any development that may conceivably affect the outcome of the litigation. St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1173 (La.1987). Additionally, Rule 3.3 of the Louisiana Rules of Professional Conduct, entitled "Candor toward the tribunal," provides, in pertinent part, as follows:
(a) A lawyer shall not knowingly:
(1) Make a false statement of material fact or law to a tribunal;

*691 (2) Conceal or knowingly fail to disclose that which he is required by law to reveal ...;
* * *
(4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
The duty set forth in section (a)(1) of Rule 3.3 (to refrain from making false statements) is a continuing duty to the end of the proceeding. Moreover, the duties placed on an attorney in sections (a)(2) and (a)(4) to not knowingly conceal that which the attorney is required by law to reveal and to take "reasonable remedial measures" where the attorney discovers the falsity of evidence offered are unlimited in time.[4] La. Rules of Prof'l Conduct, Rule 3.3(b); Washington v. Lee Tractor Company, Inc., 526 So.2d 447, 448-449 (La. App. 5th Cir.), writ denied, 532 So.2d 131 (La.1988).
In Washington, the Fifth Circuit Court of Appeal held that a party's refusal to proceed with rescission of a summary judgment where counsel for that party had later learned that the affidavit upon which the judgment had been based was erroneous and false constituted an ill practice. Washington, 526 So.2d at 448. In so holding, the court noted that failure to correct false evidence, even if originally offered in good faith, violates Rule 3.3 of the Rules of Professional Conduct. Washington, 526 So.2d at 449.
Similarly, we find no merit in Redeeming Word's assertion that an act or omission allegedly involving failure to disclose new evidence that renders previous testimony suspect cannot form the basis of a finding of fraud or ill practices pursuant to LSA-C.C.P. art.2004 simply because the particular act or omission occurs after rendition of the trial court's judgment and during the pendency of the appeal process.
Additionally, while Redeeming Word argues that its act or omission, which allegedly constituted an ill practice, occurred subsequent to rendition of the trial court's judgment and, thus, the judgment could not have been obtained by its alleged ill practices, we note that the trial court's judgment is not the judgment rendered in its favor of which Morton Buildings complains. Rather, we observe that the judgment in Redeeming Word's favor which Morton Buildings seeks to annul is the prior judgment of this court, which was rendered subsequent to Redeeming Word's execution of the hold-harmless agreement.[5] Thus, Redeeming Word's argument that the alleged ill practices occurred subsequent to rendition of the judgment complained of lacks merit.
We likewise reject Redeeming Word's argument that, pursuant to LSA-C.C.P. art.2005, this court's previous judgment may not be annulled because the ground alleged to nullify the judgment appeared in the record on appeal and was considered by this court in rendering the original opinion. Article 2005 of the Louisiana Code of Civil Procedure provides that "[a] judgment affirmed, reversed, amended, or otherwise rendered by an appellate court *692 may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court." Redeeming Word contends the issues of the usefulness of the building and the indefinite-continued-future use of the building by Redeeming Word were considered by both the trial court and the appellate court and, consequently, the issue of Redeeming Word's continued use of the building cannot form the basis for nullity of this court's previous opinion.
However, contrary to Redeeming Word's argument, the ground alleged, and the actual basis for, the nullification of this court's original opinion was Redeeming Word's failure to disclose its execution of the hold-harmless agreement which allegedly resolved the elevation problem and the question of permanent occupancy. The existence of the hold-harmless agreement and any ramifications of that agreement were unknown to the appellate courts and clearly were not considered by this court in our rendition of an opinion.
We find no merit in Redeeming Word's remaining argument that the trial court erred in granting summary judgment where material issues of fact existed. Substantive law determines whether a particular fact in dispute is material. Spears, 2000-2799 at p. 4, 807 So.2d at 1185.
In considering a petition for nullity based on fraud or ill practices, relevant considerations are whether the petitioner was deprived of his legal rights and whether enforcing the judgment would be inequitable or unconscionable. Belle Pass Terminal, XXXX-XXXX at p. 6, 800 So.2d at 766. Louisiana law provides: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." LSA-C.C. art. 2298.
Relying upon that principle, the only material issue of fact is whether Redeeming Word is able to use and occupy the gymnasium and education building and has been enriched by the construction of the building. It is well settled in the jurisprudence that an injured party has a duty to take reasonable steps to mitigate damages. LSA-C.C. art.2002; Aisole v. Dean, 574 So.2d 1248, 1253-1254 (La.1991), and cases cited therein. Redeeming Word was very successful in doing just that. This issue has been resolved; Redeeming Word has its certificate of permanent occupancy and has no restrictions upon its use of the building. Thus, the prior judgment would award to Redeeming Word full ownership and unrestricted use of a gymnasium and educational building for which it paid nothing, thereby unjustly enriching Redeeming Word at the expense of Morton Buildings. See LSA-C.C. art. 496; A. Yiannopoulos, Property, La. Civ. Law Treatise § 276, pp. 553-556 (4th ed.1991); Britt Builders v. Brister, 618 So.2d 899, 902 (La.App. 1st Cir.1993)(wherein this court observed that "[t]he redactors of our Civil Code envisioned application of Article 496 when the owner of the immovable would be unjustly enriched by the efforts of a good faith possessor." (Emphasis added)).
Redeeming Word's failure to inform Morton Buildings or this court of its pending resolution with the City/Parish undoubtedly thwarted the fairness of the prior judgment. Because the Civil Code has provisions enacted to prevent unjust enrichment, enforcing the original judgment would be unconscionable and inequitable. When the enforcement of a judgment would be unconscionable and inequitable, courts are obliged to strike down such a judgment. Belle Pass Terminal, XXXX-XXXX at p. 10, 800 So.2d at 769.
Our decision today puts the parties in the same legal positions they occupied prior to the original trial court judgment. Morton Buildings has a main demand for specific performance for an alleged unpaid portion of the contract price. LSA-C.C. *693 art.1986 et seq. Redeeming Word has a reconventional demand for dissolution of the contract and damages. LSA-C.C. art. 2013 et seq. Pursuant to LSA-C.C. art. 2014, dissolution of the contract is no longer a viable remedy; damage awards are. LSA-C.C. art.1944 et seq.

CONCLUSION
For the above and foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Morton Buildings. All costs of this appeal are assessed against appellant, Redeeming Word of Life Church. This matter is remanded for resolution of all pending issues between the parties in accordance with law and the views expressed herein.
AFFIRMED AND REMANDED.
NOTES
[1] Judge Walter I. Lanier, Jr., retired, is serving as judge ad hoc and Judge Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Shortly before Morton Buildings filed its suit for nullification, Redeeming Word had filed suit against Morton Buildings contending that Morton Buildings had committed the torts of conversion and abuse of civil process in executing on the original judgment of the trial court in its favor during the pendency of Redeeming Word's devolutive appeal. Although the suits were consolidated, Redeeming Word's claim for damages for conversion and abuse of process are not before us at this time.
[3] The hold harmless agreement, dated August 7, 1998 and signed by Reverend Diamond on behalf of Redeeming Word, provides, in pertinent part, as follows:

As owner we are hereby requesting that the City of Baton Rouge/Parish of East Baton Rouge grant the Redeeming Word of Life Church a flood variance so that we can obtain a final inspection on our building which was erroneously constructed below the required flood elevation. We understand that because of the discrepancy we may not be able to obtain flood insurance and if we are able to obtain it, it may be at a much higher rate than normal.
We agree to hold the City of Baton Rouge/Parish of East Baton Rouge free and harmless from any liability for granting us a variance and a final inspection for our building which has been constructed below the required flood elevation. We agree that this variance is being granted at our request and we agree to reimburse the City of Baton Rouge/Parish of East Baton Rouge for any expenses that may be incurred as a result of any legal proceedings that may be filed in connection herewith.
[4] The duties set forth in subsections (a)(2) and (4) also apply even if compliance requires disclosure of information otherwise considered confidential pursuant to Rule 1.6 of the Rules of Professional Conduct. La. Rules of Prof'l Conduct, Rule 3.3(b).
[5] Under certain circumstances as set forth in LSA-C.C.P. art.2005, a judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled through an action for nullity. The action to annul a judgment rendered by an appellate court must be brought in the trial court. LSA-C.C.P. art.2006.