HUGHES, J.
| ¡¡Plaintiff, Eva Harris, appeals from the trial court’s granting of a motion for summary judgment in favor of defendant, the State of Louisiana Department of Public Safety and Corrections. The trial court found that as to the State of Louisiana, Ms. Harris’s exclusive remedy for her injuries from an incident that occurred on May 18, 2003 was through workers’ compensation. It dismissed her tort action with prejudice. For the reasons that follow, we reverse.
I. FACTS AND PROCEDURAL HISTORY
On or shortly before the evening of May 18, 2003, Tran Thinh, an inmate serving a life sentence for aggravated rape, was transported from the maximum-security Louisiana State Penitentiary at Angola (Angola) to Earl K. Long Medical Center (Earl K. Long) for medical treatment. From the facts in the record, it appears that from the time Mr. Thinh left Angola until he reached and was admitted to Earl K. Long, he was restrained with metal restraints according to policies of the Department of Public Safety and Corrections (DPSC). DPSC’s policy at that time dictated that once an inmate was admitted to Earl K. Long as a patient, security measures and control shifted almost entirely to the aegis of the hospital, which had its own policies for securing inmates.[1] Upon his admittance, Mr. Thinh was assigned to the ICU unit and placed in leather leg restraints; hospital staff maintained the keys to these less restrictive restraints, which were used in the hospital setting because they did not interfere with medical care to the same extent as metal restraints. Correctional officer Sgt. Aaron Stanwood followed Mr. Thinh’s ambulance from Angola to Earl K. Long and was | .¡assigned to handle security detail pursuant to Mr. Thinh’s arrival and stay at Earl K. Long.
Once Mr. Thinh had been settled in the ICU, Sgt. Stanwood was posted outside that area. It was hospital policy at that time that the security officer on duty could not be in the same room as the patient and medical personnel; in the event of a medical emergency, the security guard might be in the way. Around this time, either Mr. Thinh asked to use the restroom or a *798 nurse instructed Mr. Thinh to provide a stool sample. The nurse removed Mr. Thinh’s restraints, “put a monitor on his finger,” closed the curtain, and returned to his or her desk. Thus released and left alone, Mr. Thinh escaped out of a window.
At about the same time, Eva Harris arrived in her car and apparently parked in one of the hospital’s general or public parking lot areas. She had been employed at Earl K. Long for over twenty years as a respiratory therapist and was on her way to work a shift that evening. As she was getting out of her car, Mr. Thinh attacked her, pushed her back into her car, and beat her with “a bottle and fist.”. Mr. Thinh continued his escape effort after the incident but within fifteen to twenty minutes, Sgt. Stanwood found Mr. Thinh hiding behind some bushes and returned the inmate to custody.
Ms. Harris filed suit on May 14, 2005 alleging intentional torts by Mr. Thinh and negligence on the part of Sgt. Stanwood, Angola, and DPSC. Her allegations focus on DPSC’s failure to ensure that Mr. Thinh was properly restrained, failure to properly train and instruct correctional officers in dealing with violent prisoners on transport assignments, and failure to establish reasonable procedures for such assignments. Ms. Harris claims | ¿physical pain and suffering, mental anguish and emotional distress, loss of enjoyment of life, lost wages, and medical expenses.
All defendants, including Mr. Thinh, answered during August 2004; DPSC filed a motion for summary judgment in September 2004, alleging that Ms. Harris’s exclusive mode of recovery was through workers’ compensation, not tort litigation. According to DPSC, both Ms. Harris and Sgt. Stanwood were state employees “in the course and scope of employment”[2] at the time of the incident (as was the nurse who unfastened Mr. Thinh’s restraints); thus, the negligence at issue amounts to an accident caused by a co-worker and is limited as a matter of law to the sphere of workers’ compensation. Ms. Harris argued in opposition that genuine issues of material fact existed as to whether her injuries “arose out of’ her employment or occurred “in the course of’ her employment, as required by Louisiana Revised Statutes 23:1031.
The trial court heard the motion in May 2005. In November 2005, the trial court issued its signed judgment granting defendants’ motion pursuant to oral reasons: “The court has carefully reviewed this matter and is of the opinion that petitioner’s exclusive remedy is under workers’ compensation.” Ms. Harris has appealed to this court. She alleges the trial court erred in (1) granting defendants’ motion for summary judgment when genuine issues of material fact remained and (2) deciding substantively that her exclusive remedy was through workers’ compensation and not tort litigation.
II. LAW AND DISCUSSION
A. Summary Judgment
[¡A- motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. BellSouth Telecomm., Inc. v. Indus. *799 Enter., Inc., 96-0682/p. 3 (La.App. 1 Cir. 2/14/97), 690 So.2d 145, 147. According to Louisiana Code of Civil Procedure article 966(A)(2), “[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action .... The procedure is favored and shall be construed to accomplish these ends.”
Functionally, a motion for summary judgment is appropriate if the mover can demonstrate that “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. art. 966(B). A fact is material “if its existence is essential to the plaintiffs cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute.” BellSouth, 96-0682 at p. 3, 690 So.2d at 148 (citing Penalber v. Blount, 550 So.2d 577, 583 (La.1989)).
The mover bears the burden of proof. LSA-C.C.P. art. 966(C)(2). To satisfy this burden, the mover must “meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact.” BellSouth, 96-0682 at pp. 3-4, 690 So.2d at 148. Finally, it is well settled that “[ajppellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.” Schroeder v. Bd. of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). | ^Finally, “[bjecause it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case.” BellSouth, 96-0682 at 4, 690 So .2d at 148. In the case at bar, workers’ compensation is the appropriate substantive legal regime.
Louisiana Revised Statutes 23:1031 and 1032 set out the basic tenets of contemporary workers’ compensation law in Louisiana. Generally speaking, the workers’ compensation regime represents a quid pro quo compromise of interests: “the employee receive[s] an absolute right to recover limited benefits in exchange for the employer’s tort immunity.” Frank L. Maraist & Thomas C. Galligan, The Employer’s Tort Immunity: A Case Study in Post-Modern Immunity, 57 La. L.Rev. 467, 473 (1997). A plaintiff may recover greater amounts through tort litigation but it is a riskier strategy than accepting workers’ compensation. The employer is likely to defend itself vigorously and a loss for the plaintiff will likely foreclose attempts to pursue workers’ compensation after the fact. Id. at 476.
The crucial question in the distinction between injuries actionable in tort and injuries confined to workers’ compensation is whether the accident that caused the injury occurs during the course of the plaintiffs employment or arises out of the circumstances of plaintiffs employment. LSA-R.S. 23:1031(A). In essence, if the accident cannot be linked to the plaintiffs employment, then recovery in tort may be available.
The leading case in Louisiana on this issue is Mundy v. Department of Health & Human Resources, 593 So.2d 346 (La. 1992), which demonstrates the advantages and risks to a plaintiff who must decide between workers’ compensation and tort litigation. A nurse on her way to work at Charity Hospital in New Orleans was stabbed while she rode the |7building elevator up to her floor. She sued in tort, *800 alleging employer negligence in failing to provide adequate safety and security for the hospital’s patients, visitors, and employees. Id. at 348. The trial court found that Ms. Mundy was not in the course of her employment at the time of the attack and rendered judgment in the amount of $125,000.00. Id. The court of appeal reversed, finding that Ms. Mundy was indeed in the course of her employment and that the attack arose out of the circumstances of her employment; the Louisiana Supreme Court granted writs. Id. at 348-49.
The supreme court noted that an employer seeking to redirect a plaintiffs claim from tort into workers’ compensation has the burden of proving entitlement to immunity from suit in tort; thus, the employer must demonstrate that the plaintiffs injuries either occurred “in the course of’ employment or “arose out of’ employment. Id. at 349. The two concepts are characterized by a “mutual interdependence” in which a strong showing of “in the course of employment” can overcome a weak showing of “arising out of employment” and vice-versa. Id. at 349-50.
The “in the course of employment” element asks whether the injury occurred while the plaintiff was “actively engaged in the performance of his duties during working hours.... [T]he principal criteria... are time, place and employment activity.” Id. at 349. The “arising out of employment” element requires a slightly more complex analysis. It focuses on the “character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment.” Id. Essentially, “[a]n accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment.” Id. This element may refer either to a plaintiffs status as an employee or to some personal characteristic or fact particular to “this” plaintiff, such as an attack |sby a jilted lover who would know precisely where the plaintiff worker would be at a given time. Id: at 350.
Within the analytical nexus of the “in the course of’ and “arising out of’ elements, Louisiana’s courts have developed rules and exceptions. Germane to the case at bar is the rule that accidents occurring while an employee is either going to or returning from work do not occur in the course of nor arise out of employment unless the employee is actually performing services at the employer’s behest when the accident occurs. Id. & n. 3. The primary exception to this rule is the “threshold doctrine,” which holds that employee injuries resulting from accidents or incidents that occur within the vicinity of an employer’s premises will be subject to workers’ compensation if “special” or “unusually hazardous” risks exist in the area that are “attributable to the location of the work premises [and either] different from the risks to which the general traveling public is exposed or... more aggravated in the area adjacent to the employer’s premises than elsewhere.” Id. at 350. The “threshold doctrine” asks whether conditions leading to the incident or accident are “peculiar and distinctive” to the vicinity of the workplace, such that employees are exposed to a greater extent or frequency of risk than the general public. Id. (citing Templet v. Intracoastal Truck Line, Inc., 255 La. 193, 230 So.2d 74 (1969)).
In Mundy, the supreme court reasoned that the plaintiff was not “in the course of’ her employment when she was attacked in the elevator, as she had neither begun her employment duties nor reached her work station or any place where she would be “under the supervision and control” of her employer. Id. The court also found that *801 Ms. Mundy’s injuries did not “arise out of’ her employment, as the risk of a stabbing attack by a random stranger was a “neutral risk” unrelated either to her employment status or to | aher personal life. Id. Finally, the court declined to apply the “threshold doctrine” exception because “the risk [of an attack by a random violent stranger] was no more dangerous in the immediate vicinity of the employer’s premises than elsewhere along her [Ms. Mun-dy’s] route of travel to work.” Id. at 351. Thus, the court concluded that Ms. Mun-dy’s employer had no immunity and her suit in tort could continue; she was not limited to recovery through workers’ compensation.[3]
In the case at bar, Ms. Harris alleges that under the substantive law of workers’ compensation, genuine issues of material fact persist such that the trial court’s granting of summary judgment was. inappropriate. Specifically, she alleges that DPSC has not refuted with any certainty her ability to show that she was not in the course of her employment at the time of the attack.
As noted above, the state defendants must have shown in their motion that “it is quite clear what the truth is and excludes any real doubt as to the existence of material fact.” BellSouth, 96-0682 at pp. 3-4, 690 So.2d at 148. In the case at bar, this question is clearly one concerning a “material fact” as defined in Louisiana Code of Civil Procedure article 966(C)(2) and explained in BellSouth, 96-0682 at p. 3, 690 So.2d at 148. Ms. Harris’s ability to show that she was not in the course of her employment at the time of the attack is an essential element in her bid to proceed in tort rather than workers’ compensation, thus it is material to her claim or action.
Ms. Harris alleged in both her petition and her affidavit that she was returning to work at the time of the attack [R3, 92]. The affidavit explains that she had originally been scheduled to work that day at the hospital from 11n6:45 in the morning to 7:00 in the evening, had been excused at about 4:00 in the afternoon to attend her grandson’s graduation, and that due to staff shortages, she was arriving at 6:50 that evening to pick up a shift until 9:00 that night. Clearly, then, Ms. Harris has established that her absence from work between 4:00 and 6:50 was not work-related and her presence in the parking lot at the time of the attack was arguably excluded from workers’ compensation due to the rule that excludes injuries sustained while “either going to or returning from work” unless the threshold doctrine applies. See supra p. 800.
DPSC, in its memorandum in support of the motion for summary judgment and briefs to this court, argues that Ms. Harris was in the course of her employment at the time and that she essentially admitted or judicially confessed as much in her pleadings as well as by the manner in which she completed the necessary human resources paperwork associated with the incident and by her acceptance of workers’ compensation benefits since the date of the incident.
At the outset, we point out that acceptance of benefits does not necessarily constitute an admission or confession by the recipient as to employment *802 status at the time of an accident or incident. See Dye v. Ipik Door Co. Inc., 570 So.2d 477, 479 (La.App. 5 Cir.1990); see also Boudreaux v. Falco, 215 So.2d 538, 541 (La.App. 1 Cir.1968). [B7] Ms. Harris thus has not waived her right to sue in tort. Further, Ms. Harris’s factual allegations must be viewed in her favor and with the benefit of the doubt, as is the case in summary judgment analysis. Schroeder, 591 So.2d at 345. Given this, we conclude that Ms. Harris’s employment “status” at the moment of the attack is a genuine issue of material fact. It is an essential Inelement of this litigation and one that Ms. Harris may be able to establish at trial.
B. Workers’ Compensation
Ms. Harris’s next assignments of error concern the trial court’s substantive determination that her remedy is limited exclusively to workers’ compensation, presumably because the court determined that her injuries either arose out of her employment status or occurred while she was in the course of her employment [R250]. Applying the two-pronged “in the course of’ and “arising out of’ test introduced above resolves these questions; we apply this test in the case at bar to review whether, as a matter of law, DPSC is entitled to summary judgment limiting Ms. Harris’s recovery to workers’ compensation.
As discussed above, the “course of employment” aspect of Louisiana Revised Statutes 23:1031(A) is a fact-dependent inquiry into the particular time, place, and employment activity at issue in a given case. As for the time factor, workers’ compensation has been interpreted to cover a wide span of time periods, as much as forty-five minutes before a shift begins. See Bosse v. Westinghouse Elec., Inc., 93-1898, p. 1 (La.App. 4 Cir. 5/17/94), 637 So.2d 1157, 1158; writ denied, 94-1623 (La.9/30/94), 642 So.2d 878. In Mundy, however, the nurse plaintiff “was attacked before she arrived at her work station and before she began her employment duties.” Mundy, 593 So.2d at 350. This occurred about three minutes before the scheduled start of her shift. Id. at 348. In the case at bar, Ms. Harris was attacked perhaps ten minutes before the scheduled start of her shift, thus, this factor tends to favor Ms. Harris.
The factor of “place” refers to the actual situs where work activities occur. Id. at 350. In Mundy, the supreme court noted that the attack | ^occurred when the elevator reached the second floor, but Ms. Mun-dy’s job duties were limited to the eleventh floor. Thus, Ms. Mundy was not in the course of employment at time of the attack because “[s]he clearly had not yet reached the place where she would be under the supervision and control of her employer.” Id. In the case at bar, similarly and to a greater degree, Ms. Harris was in the parking lot and thus clearly not in a place where she was in the course of employment when Mr. Thinh attacked her. This factor favors Ms. Harris.
The “employment activity” factor in Mundy favored the plaintiff, who was attacked “before she began her employment duties.” Id. at 350. Similarly, this element clearly favors Ms. Harris, who was quite obviously not engaged in any job duties or responsibilities at the time of the attack. In fact, as a respiratory therapist, it is questionable whether she could even perform her work duties outside the confines of the hospital building. Based on the foregoing analysis, we conclude that Ms. Harris has a reasonable chance of proving that this accident did not occur “in the course of’ her employment.
As discussed above, the “arising out of’ prong of this inquiry asks whether “the *803 risk from which the injury resulted was greater for the employee than for a person not engaged in the employment.” Id. at 349. In Mundy, the supreme court resolved this question in the plaintiffs favor, deeming the attack a “neutral risk that was not related either to plaintiffs employment or to her personal life.” Id. at 350. Describing Mundy, the United States Court of Appeals for the Fifth Circuit has written that Ms. Mundy was injured by a “third-party criminal attack which could have occurred (1) to anyone (2) anywhere. The presence and act of the criminal was certainly unanticipated equally by an employee or an invitee” who |1smight have been riding in the hospital elevator. Harris v. Wal-Mart Stores, Inc., 205 F.3d 847, 850 (5th Cir.2000).
In the case at bar, Ms. Harris’s experience mirrors Ms. Mundy’s. Nothing in the record suggests, and DPSC has not argued, that Ms. Harris parked in a special or required employee parking lot at Earl K. Long, which might place her more squarely within Earl K. Long’s ambit than a visitor or member of the general public.[4] Rather, it appears that Ms. Harris parked in a public parking area open and available to any worker, guest, or other visitor to the hospital. She could have been anyone in the wrong place at the wrong time; the risk that Mr. Thinh would escape and attack her was not greater for her than for anyone else who might have been at that place and at that time. We conclude that Ms. Harris has a reasonable prospect of showing that this injury did not “arise out of’ her employment.
As a final matter, consideration of the “threshold doctrine” described above cannot be used to discount Ms. Harris’s claims at this point in the litigation, just as the supreme court rejected its use in Mundy. 593 So.2d at 351. Presumably, the parking lot where Mr. Thinh attacked Ms. Harris is located within the “threshold” of the hospital premises. It is not abundantly clear, however, that the lot itself presented a special, different, or otherwise particularized risk greater to employees like Ms. Harris than to the general public. Additionally, the lot’s apparently public nature, as well as the public nature of the hospital, mitigates against finding a specialized risk under the threshold doctrine. At any rate, the record does not present a clear enough | ushowing of these facts such that summary judgment is appropriate at this time.
We realize that Mundy has not been unscathed in the years since it was decided in 1992. See Harris, 205 F.3d at 848 (citing Bosse, 93-1898 at p. 5, 637 So.2d at 1159-60). A careful reading of the jurisprudence reveals, however, that where courts have refused to extend Mundy, they have specified that the cases are easily distinguishable. In Harris, the employer defendant made a far stronger showing that the plaintiffs injury arose out of her employment status than in Mundy, in Bosse, the plaintiffs injury resulted from a tangible physical defect in the actual employment premises, a misleveled elevator. Harris, 205 F.3d at 850; Bosse, 93-1898 at p. 1, 637 So.2d at 1158. See also Mitchell v. Brookshire Grocery Co., 26,755, p. 4 (La.App. 2 Cir. 4/5/95), 653 So.2d 202, 205, *804 writ denied, 95-1115 (La.6/16/95), 655 So.2d 339. Even while declining to extend Mundy, the Bosse court expressed the distinction from Mundy in strong terms: “A random act of violence could occur anywhere, but a defect in the premises at the place of employment is ‘peculiar and distinctive’ to that location” and thus more suitable for workers’ compensation than for tort recovery. Bosse, 93-1898 at p. 4, 637 So.2d at 1159. Thus, DPSC’s critiques of Mundy do not apply to the case at bar, which is factually “on all fours” with Mun-dy.
Ms. Harris’s next assignment of error challenges the trial court’s finding that workers’ compensation is her sole source of recovery from the State of Louisiana and excluding the possibility of tort litigation. Ms. Harris’s assertions that she has not waived her right to a tort claim against DPSC by accepting workers’ compensation benefits under the aegis of her employer, the Department of Health (as administrator of Earl K. Long), have been addressed above. See supra, pp. 801-02.
| ¶ (¡Further, DPSC contends that Ms. Harris is attempting to obtain double recovery by suing it in tort while she also collects workers’ compensation benefits from her employer. Because we conclude that questions of fact remain as to whether Ms. Harris was in the course of employment when she was attacked such that her injuries may not have arisen out of her employment, we also conclude that she has not waived her tort claim against the state defendants. In the event that Ms. Harris wins a verdict in tort that outstrips the workers’ compensation benefits she has received, the State may seek a credit or offset pursuant to ordinary intervention as allowed under Louisiana Code of Civil Procedure article 1091 or through the “third party” procedures set out in Louisiana Revised Statutes 23:1101.
DPSC has also argued that because Ms. Harris and Sgt. Stanwood were both state employees, albeit of different departments, acting in the course of their employment at the time of the incident, the State of Louisiana’s immunity from tort litigation is even more secure; they claim that as the “ultimate defendant,” the State “cannot be considered a ‘third person’ tortfeasor when two of its departments are involved in litigation.” Wright v. Moore, 380 So.2d 172,173-74 (La.App. 1 Cir.1979).
This reasoning ignores the primary lesson of Mundy. When a defendant cannot show sufficiently either that the plaintiff was in the course of employment at the time of the injury or that the injury arose out the plaintiffs employment status, the plaintiff is free to sue in tort as if he or she had been any member of the general public. In this scenario, any responsible or negligent entity may be a defendant. It matters not whether the defendant is the plaintiffs employer, a state agency, or a private business. In the case at bar, DPSC has not shown as an undisputed material fact that Ms. Harris was in the course of her employment when Mr. Thinh |1(i attacked her; nor has it shown as an undisputed material fact that the risk of the attack arose out of the circumstances of Ms. Harris’s employment. Thus, DPSC has not succeeded in proving immunity from tort.
Ms. Harris’s final assignment of error argues that DPSC’s negligence amounted to a breach of its duty to prevent inmate escape and to protect the general public against injuries that may arise in the furtherance of an inmate escape attempt. Because we find that the state defendants have not shown immunity from tort suit in this matter, we conclude that the question whether their actions amount to negligence under Louisiana’s duty risk analysis *805 is a genuine issue of material fact suitable for trial.
Having reviewed the law, the record, and the arguments of both parties, we conclude that Ms. Harris’s assignments of error have merit. Genuine issues of material fact remain such that summary judgment is not procedurally appropriate at this time. As a substantive matter, DPSC has not shown with sufficient certainty that Ms. Harris’s recovery is limited to workers’ compensation. Her suit in tort may continue.
CONCLUSION
For the above and foregoing reasons, we reverse the November 9, 2005 judgment that granted defendants’ motion for summary judgment and dismissed plaintiffs cause of action with prejudice. We also remand for further proceedings in accordance with this ruling. Costs of this appeal are assessed against the Department in the amount of $614.53.
REVERSED AND REMANDED.

. In July 2003, DPSC enacted more restrictive policies to ensure that corrections personnel have control over a prisoner-patient's restraints and are either present with or can see the inmate at all times,

. Louisiana Revised Statutes 23:1031 refers specifically to injuries "arising out of and in the course of" the plaintiff’s employment. The phrase "course and scope of employment” is often used loosely in workers’ compensation analysis, but belongs more properly to the subject of an employer's vicarious liability for torts caused by an employee. See generally William E. Crawford, Tort Law, Louisiana Civil Law Treatise vol. 12, 145 (2000); H. Alston Johnson, III, Workers' Compensation Law and Practice, Louisiana Civil Law Treatise, vols. 13 & 14, 266-69 (2002).

. Unfortunately for Ms. Mundy, she ultimately lost on the merits of her case; it was found that the employer’s duty of reasonable care did not include the risk that occurred. Mun-dy v. Dep’t of Health & Human Resources, 609 So.2d 909 (La.App. 4 Cir. 1993), affd, 620 So.2d 811 (La.1993). For this reason, the Mundy litigation demonstrates both the advantages and risks attendant in the decision whether to accept worker's compensation or attempt a suit in tort.

. Defendants cite Louisiana Casino Cruises, Inc. v. Liberty Mutual Fire Insurance Co., an unpublished opinion by the United States Court of Appeals, Fifth Circuit, available at 88 Fed.Appx. 721 (5th Cir.2004). That case, in which the plaintiff employee was raped in a casino parking lot, is distinguishable on the facts from the case at bar; the plaintiff parked pursuant to her employer’s policy that required workers to park in a special lot designated for employees; the employee lot was farther away from the premises than the general public lot and more dangerous because it was easy to determine that victims might be regularly walking back and forth.