Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,324-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

\* \* \* \* \*

LEON WILLIAMS                                  Plaintiff-Appellant

versus

FINANCIAL INDEMNITY                            Defendants-Appellees
INSURANCE COMPANY,
ET AL

\* \* \* \* \*

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-CV-00334

Honorable Aisha S. Clark, Judge

\* \* \* \* \*

| | |
|---|---|
| OFFICE OF ANTHONY J, BRUSCATO<br>By: Anthony J. Bruscato | Counsel for Appellant |
| VOORHIES & LABBE'<br>By: Cyd Sheree Page | Counsel for Appellee,<br>Financial Indemnity<br>Insurance Company |
| LUNN IRION LAW FIRM<br>By: Gerald Martin Johnson, Jr. | Counsel for Appellee,<br>ABC Agency Network,<br>Inc. |
| DEMETRICK JONES | In Proper Person, Appellee |
| CLAIRE JONES | In Proper Person, Appellee |

\* \* \* \* \*

Before MOORE, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Plaintiff, Leon Williams ("Williams"), sued Defendants, Financial Indemnity Insurance Company ("Financial Indemnity"), Demetrick Jones ("Mr. Jones"), Claire Jones ("Mrs. Jones"), and ABC Agency Network, Inc. ("ABC Agency"), seeking damages for injuries suffered by Williams in an automobile collision caused by the alleged negligence of Mr. Jones.

Financial Indemnity moved for summary judgment based on lack of coverage of Mr. Jones since he was an excluded driver under the liability policy, which Williams opposed. The trial court granted the motion, finding no genuine issue of material fact since the insurance policy was clear that Mr. Jones was not covered. Williams appeals that judgment.

For the following reasons, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Williams was in an automobile collision with Mr. Jones, the driver and one of the registered owners of a 2005 Chevrolet Silverado 1500. The liability insurance policy in place on the Silverado at the time of the accident was purchased by Mrs. Jones, Mr. Jones' wife, (and the vehicle's other registered owner), from Financial Indemnity, and was issued by ABC Agency. Mr. Jones was listed as an "excluded driver," as clearly indicated by the policy declarations page and endorsement, and as stipulated by the parties. However, the insurance identification card issued by Financial Indemnity did not specifically list any excluded drivers, particularly, Mr. Jones. The card was produced by Mr. Jones to the investigating officer at the scene of the collision, who treated it as valid proof of insurance and

recorded its information in the accident report. No penalties were imposed as a result of a vehicle being operated without insurance.

Williams filed suit against Defendants, Financial Indemnity and Mr. Jones, in January 2020, asserting that he was injured in the collision allegedly caused by the negligence of Mr. Jones, and at the time of the collision, Mr. Jones' vehicle was insured by Financial Indemnity. Williams filed an amended petition in May 2020, joining Defendants, Mrs. Jones and ABC Agency.

Mr. and Mrs. Jones filed an answer on January 27, 2021. Financial Indemnity filed a motion for summary judgment shortly thereafter on February 2, 2021, along with an original brief in support of said motion, asserting that there was no coverage under its policy because Mr. Jones was the driver of the vehicle involved in the accident, and the policy expressly listed him as an excluded driver. Williams' opposition was filed on March 1, 2021. A hearing on the motion was held March 15, 2021, and the motion was granted. A written judgment was entered on April 8, 2021.

## DISCUSSION

Williams argues that the trial court erred in granting Financial Indemnity's motion for summary judgment based on lack of coverage under the liability policy. He claims that Financial Indemnity should be estopped from denying coverage as a result of its issuance of a misleading insurance identification card offered as proof of insurance by Mr. Jones, which omitted Mr. Jones as an excluded driver. As a result of the omission, Mr. and Mrs. Jones could use the card to circumvent the Louisiana Motor Vehicle Safety

Responsibility Law by providing a "fake ID" to law enforcement officers and escaping statutory penalties imposed on uninsured drivers.

Williams claims that if Financial Indemnity knew or should have known that its identification card was likely to be used for the purpose of deceiving a law enforcement officer, then it intentionally or negligently assisted Mr. Jones in deceiving the officer. When a person who has a duty to speak remains silent with the intent to deceive, this is fraud prohibited by La. C.C. Art. 1953. When the person who has a duty to speak remains silent negligently, this gives rise to a claim for negligent misrepresentation. *Hardy v. Easy T.V. & Appliances of La., Inc.*, 2001-0025 (La. App. 4 Cir. 12/12/01), 804 So. 2d 777, 781 (cause of action for negligent misrepresentation may arise where defendant has "a legal duty to supply correct information" and breaches that duty).

Williams refers to the specific language in La. Rev. Stat. § 32:863.1 and La. Admin. Code tit. 55, Pt 111, § 1760, which both require that an insurance identification card must include the identity of any excluded driver. La. Rev. Stat. § 32:861 requires all vehicle owners and operators to carry proof of liability coverage in the vehicle in the form of an insurance declarations page, a complete insurance policy, or an insurance identification card compliant with La. Rev. Stat. § 32:863.1(A). La. Rev. Stat. § 32:868 authorizes creation of a database which will permit investigating officers to check in real time to determine whether a vehicle is being operated in violation of the Act. Stringent penalties are imposed on owners and operators when a vehicle is operated without liability coverage, listed in La. Rev. Stat. § 32:862(G), La. Rev. Stat. § 32:863, La. Rev. Stat. § 863.1. The

penalties include: immediate impoundment and towing of any vehicle found to be operating without liability coverage; cancellation of the vehicle's registration and seizure of the license plate; revocation of the driver's licenses of the owner and/or operator; and fines and fees imposed on the owner and operator.

Williams argues that Financial Indemnity should be estopped from denying coverage based on public policy because it is a "scofflaw" insurance company seeking to profit by deliberately issuing inaccurate insurance identification cards in violation of the law. He claims that vehicle owners/drivers and insurers have a financial incentive to obtain/issue "fake IDs". A vehicle owner will have to pay a higher insurance premium if high-risk drivers are covered under their liability policy. Therefore, they exclude the high-risk drivers in order to pay a lower premium. If the ID card does not list the excluded driver, an investigating officer viewing the card will have no reason to believe the driver is uninsured and the owner/driver is then able to avoid penalties. A "scofflaw" insurance company is willing to issue "fake ID's" to gain a competitive edge in the insurance market, compared to law abiding companies, because they attract the business of vehicle owners who want to circumvent the Louisiana Safety Responsibility Law.

Williams also argues that it is reasonable to allow him to conduct additional discovery to determine whether Financial Indemnity is, in fact, a "scofflaw" insurer since Financial Indemnity's motion for summary judgment was brought on for hearing prior to any discovery taking place and without an explanation as to why a deficient identification card was issued. It simply claimed that any reasons were irrelevant. He reasons that the trial

4

court could have reasonably reached the conclusion that either: (1) Fidelity Indemnity merely made an inadvertent error when issuing the ID card without listing Mr. Jones as the excluded driver, or (2) Fidelity Indemnity is a "scofflaw" insurance company profiting from a practice of issuing misleading ID cards that allow owners to avoid penalties resulting from uninsured drivers.

In response, Financial Indemnity points out that there is no statute that mandates an *insurer* issue an ID card listing excluded drivers, or that requires coverage to be extended if an excluded driver is not listed. Although a listing of excluded drivers is a requirement for the ID card under La. Rev. Stat. § 32:863.1, the obligation owed with regard to the referenced statute, and the penalties for failure to comply, are for the owner/operator, *not* the insurer. Rather, the only statutory obligation of an insurance carrier would be in relation to the insurer being a "security provider." La. R.S. 32:863.2 requires insurance carriers to provide information to the secretary which includes effective dates of coverage and notification when any policy has lapsed or been cancelled. A carrier *may* also be required to submit the owner's driver's license, the named insureds, VIN, and description of the vehicle; however, there is no requirement that the carrier issue an ID card listing the excluded driver(s). Even if the statute could somehow be interpreted as imposing an obligation on the carrier to issue an ID card listing excluded drivers, the failure to do so would merely warrant the referenced penalty, payment of a fee or fees. It would not afford coverage where there is none under the terms of the policy.

5

In addition, Financial Indemnity argues that the trial court correctly granted its motion for summary judgment, finding no coverage was owed since Mr. Jones was properly listed as an excluded driver on the policy's declarations page and excluded driver endorsement, and the policy language, not the insurance identification card or accident report, was determinative of coverage. It is clear from the "four corners" of Mrs. Jones' policy that the parties to the policy intended for Mr. Jones to be an excluded driver. The excluded driver endorsement listing Mr. Jones was signed by Mrs. Jones, the policyholder, and Mr. Jones was specifically referenced as an excluded driver in the policy's declaration page. It is undisputed that no coverage would be extended in favor of the excluded driver, Mr. Jones, under the terms of the policy itself.

In support of its position, Financial Indemnity cites *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So. 2d 1024, *rehearing denied* 4/9/99, in which the Louisiana Supreme Court stated, "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written …, and it should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. … That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent."

Further, an insurance identification card is not one of the documents referenced in La. Rev. Stat. § 22:654 that can amplify, extend or modify an insurance policy. Financial Indemnity argues that to hold otherwise would allow for the "perversion of the words or the exercise of inventive powers to create an ambiguity where none exists" as noted by the court in *Peterson*.

Financial Indemnity also cites cases that recognize that the policy, not the information contained on an insurance identification card, controls coverage. In both *Jacobs v. Louisiana Indemnity Insurance Company,* 96-1203 (La. App. 3 Cir. 3/12/97), 692 So. 2d 1182, *writ denied*, 693 So. 2d 802 (La. 1997), and *Adamson v. State Farm Mutual Automobile Insurance Company,* 95-2450 (La. App 1 Cir. 6/28/96), 676 So. 2d 227, the contention was that the issuance of an insurance identification card showing effective dates of coverage, which included the accident date, served to provide coverage for the loss even though the policies themselves were not in effect at the time of loss. Both appellate courts ruled that even though the information on the insurance ID card differed from the policy, the insurance cards did not serve to extend coverage beyond the terms of the policy.

Financial Indemnity also notes that, unlike the *Jacobs* and *Adamson* cases, the identification card does not contain any conflicting information on its face. Mrs. Jones is listed as the insured and there is no reference of coverage at all for Mr. Jones. Therefore, if an ID card cannot serve to expand coverage under a policy when there *is* conflicting information, it should not serve to expand coverage when there *is not* conflicting information.

In summary, Financial Indemnity asserts that only the "four corners" of policy itself serves as proof of coverage and the identification card cannot expand coverage; therefore, there is no need for additional time for discovery. We agree.

Although it appears from the record that both Mr. and Mrs. Jones are registered owners of the vehicle, it is undisputed that Mrs. Jones is the sole named insured of the Financial Indemnity policy and that under the terms of the policy itself, Mr. Jones is specifically excluded, as indicated in the excluded driver endorsement signed by Mrs. Jones and the policy declarations page.

Williams faults the insurance company based on the reasoning that the insurer purposely issues incomplete identification cards in order to gain a competitive advantage by attracting vehicle owners not wanting to pay a higher premium for high-risk drivers who supposedly intend to use such "fake ID" to avoid the penalties associated with driving uninsured. This argument that Financial Indemnity is a "scofflaw" insurer seeking to profit by deliberately issuing misleading insurance identification cards is wholly without merit.

La. Rev. Stat. § 32:900(L)(1) expressly provides that a policy may exclude from coverage any named person who is a resident of the same household as the named insured. In fact, the very purpose of the exclusion is the reduction of premiums, as an excluded driver endorsement naming the spouse with a bad driving record could result in a premium reduction that would enable the insured to obtain the required coverage at an affordable

8

price. *Medina v. Woods*, 2005-1303 (La. App. 4 Cir. 10/31/06), 944 So. 2d 697.

Financial Indemnity is correct in its analysis of the requirements of La. Rev. Stat. § 32:863.1, in that the underlying obligation of the statute is that of the owner/operator of the vehicle. It is correct that the identification should list the excluded driver under the policy, but it is the duty of the insured to comply with such requirement as part of showing valid proof of insurance. The fact that the penalties associated with failure to comply with said statute are imposed on the owner/operator of the vehicle is evidence that the underlying obligation is that of the insured, not the insurance company.

In no way should the statutes regarding the requirement for an owner/operator to possess valid proof of insurance and accompanying penalties for failure to do so, be interpreted in such a way as to impute coverage on an insurer where it is clear and unambiguous from the language of the policy that a certain named driver is excluded from liability coverage.

## CONCLUSION

For the foregoing reasons, this Court finds that there is no genuine issue of material fact as to the issue of coverage. It is clear that Mr. Jones is an excluded driver under the Financial Indemnity liability policy and no coverage exists. The trial court's granting of Financial Indemnity's motion for summary judgment is hereby affirmed.

**AFFIRMED.**